# Exhibit A

Niles, Illinois

## TRANSLATOR AFFIDAVIT

I, Eleftherios Kritikakis of Niles, Illinois, am a qualified, Berlitz-certified legal translator and interpreter for the Greek and English languages. I am a member of the American Translators Association (ATA) and the Association of Judiciary Interpreters and Translators (NAJIT).

I hereby certify that the attached translation of the "Application of Elafonissos Shipping Corporation and Keros Shipping Corporation, dated November 11, 2024, filed with the Court of First Instance of Piraeus, Greece" is, to the best of my knowledge and belief, a true and accurate translation from Greek into English.

12/7/24
ELEFTHERIOS
KRITIKAKIS

Signature

---------------------------------------------------------------------------------------------------------------------

**State of Illinois**
**County of Cook**

**Signed and attested before me on December 7, 2024, by Eleftherios Kritikakis**

OFFICIAL SEAL
LAILA HASAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 04/02/2026

**Seal**

**Signature of Notary**

[stamp:] Dematerialized stamps

[hw:] *4*

[hw:] *by Single Member Court docket E.M. - Navy*

[logo]

[hw:] *(Temporary Management Appointment) Admiralty* [illegible] *by temporary Order*

**K. F. KALAVROS LAW FIRM**

Ch. P. FILIOS • Th. Th. KLOUKINAS

[stamp:] Temporary Order Hearing [hw:] *11/12/2024* at time [hw:] *11:15* notice [hw:] *Until 11/12/2024* [illegible] Piraeus [hw:] *11/11/2024* [illegible]

[stamp:] Elias D. Delazanos Presiding Judge of First Instance [signature]

[hw:] *7823 2/4/2025* [hw:] *notice fifteen (15) days earlier for members of the last legally published Board of Directors of the Company ELETSON HOLDINGS INC*

*Piraeus, 11/11/2024* [signature] E. ICOPINA to

**BEFORE THE SINGLE-MEMBER FIRST-INSTANCE COURT OF PIRAEUS**

*(Voluntary Jurisdiction)* [hw:] [illegible] [signature]

**APPLICATION**

**For the temporary Management of a Foreign Shipping Company, and**

**Appointment of new members thereof.**

**(article 69 of the Civil Code)**

**a)** Of the foreign shipping company "**ELAFONISSOS SHIPPING CORPORATION",** which is based at its registered office in Liberia, in fact in Greece, at 118 Kolokotroni Street in Piraeus, legally represented by its shareholder and representative **Ioannis ZILAKOS, son of Nikolaos**, resident of P. Psychiko of Attica, 13 Parnithos Street, with Tax Registration Number 065443172,

**b)** The foreign shipping company "**KEROS SHIPPING CORPORATION",** which is based at its registered office in Liberia, in fact in Greece, at 118 Kolokotroni St. in Piraeus, legally represented by its shareholder and representative **Stylianos ANDREOULAKIS, son of Emmanuel**, resident of Glyfada of Attica, 34 Tyrteou St., with Tax Registration Number 013241122,

both in the capacity of shareholders of the foreign shipping company "**ELETSON HOLDINGS INC.",** which is based at its registered office in Liberia, in fact in Greece, at 118 Kolokotroni Street in Piraeus.

[hw:] *AS* [illegible] [illegible] *1234 Maria Hahali Athens Bar Association 30492*

*** O ***

**K. F. KALAVROS**
**UNIVERSITY PROFESSOR**

**M. K. KALAVROU, D.E.A.**
**Ch. K. KALAVROU, LL.M.**
**Th. Th KLOUKINAS**
**A. G. KARALEKAS**
**A. G. TSILIKA**

**Ch. P. FILIOS**
**UNIVERSITY PROFESSOR**

**I. V. VERGETI, LL.M.**
**P. A. KIOUSI, LL.M.**

**M. Ch. ASIMINAKI**
**X. N. DIAMANTI, M.A.**
**E. E. ZIAKAS, Ph.D.**
**Mr. SP. IGLEZIS**
**P. N. KALODIKIS**
**A. D. KAFETZI, LL.M.**
**A. A. KELESIDOU, LL.M.**
**E. Th. KLOUKINA, LL.M.**

**I. G. DOLAPTSI, LL.M.**
**A. N. PAPASTATHOPOULOS, LL.M.**
**A. K. ROUSSAKI, LL.M.**
**N. A. TSEMPERA, LL.M.**
**B. G. TSOURRA, LL.M.**
**K. G. FILIPPOUPOLITIS, LL.M.**
**M. P. HAHAMI**

**19 VRANA**
**115 25 ATHENS**
**210 3698700**
**CALAVROS@CALAVROS.GR**

**5 PAVLOU MELA**
**546 21 THESSALONIKI**
**2310 500770**
**THESSALONIKI@CALAVROS.GR**

**65 DONATOU DIMOULITSA**
**491 00 CORFU**
**26610 49736**
**CORFU@CALAVROS.GR**

**WWW.CALAVROS.GR**

[logo]

# A. PROCEDURAL HISTORY

## A.1. The multifamily shipping company "ELETSON". - Its parent company "ELETSON HOLDINGS INC." and its subsidiary "ELETSON CORPORATION".

Before any further elaboration, it should be noted that **ELETSON HOLDINGS INC.** is the "parent" company of the maritime multi-family business, known in maritime events on a global scale by the name "ELETSON". The latter was founded in Piraeus in 1966, by Vasilis Hatzieleftheriadis, a common ancestor of the members of the Board of Directors of ELETSON HOLDINGS and their grandparents, who, with his sons, daughters and sons-in-law as partners, founded ELETSON and afterwards achieved, both himself and his descendants, to draw a highly successful maritime course that spans over 50 years.

The company **ELETSON HOLDINGS INC.** (hereinafter **_"the Company" or "ELETSON HOLDINGS"_**) is a Societe Anonyme (corporation), which is, as mentioned above, the "parent" company of the Eletson Family House, was established as early as 12/04/1985 under the laws of Liberia, having its **real place of business in Greece where it maintains offices, at the address 118 Kolokotroni in Piraeus**, as it is managed by an eight-member board of directors, that meets at its aforementioned facilities, all members of which are Greeks and residents of Greece, all decisions for its business activities and the fulfillment of its statutory objective are taken at its offices which it maintains at the above address, given that the Company is a holding company of shipping companies, performs all its activities in Piraeus through its 100% subsidiary Eletson Corporation, which maintains, in Piraeus, a legally established office in accordance with the provisions of article 25 of Law 27/1975, where it employs approximately 50 employees, that is paid, is insured and employed by Eletson Corporation, in accordance with the provisions of Greek law.

As mentioned above, the Company is a holding company, and among other things, holds in full the shares of four Greek Special Maritime Enterprises (**ENE**), which control the ships MT Kastos, MT Kinaros, MT Kimolos and MT Fourni, under Greek Flag, which are tankers, and in particular of the Greek companies "KASTOS SPECIAL MARITIME ENTERPRISE", "KINAROS SPECIAL MARITIME ENTERPRISE", "KIMOLOS II SPECIAL MARITIME ENTERPRISE" and "FOURNI SPECIAL MARITIME ENTERPRISE", respectively.

2

[logo]

The ships are financed through loan agreements with reverse leasing (sale and lease back agreements). This means that the ships, which belonged to the above **ENEs**, were sold to companies which are subsidiaries or affiliated with the funder, and then re-leased under bareboat charterparty to the previous owners. The amount of funding is the purchase price as the case may be. The former shipowner companies (i.e. the ENEs), which are currently charterers of each ship by bareboat charterparty, pay the rent and through the rent they have been repaying financing and interest. When the loan is repaid (or leasing reaches its maturity), each ship is returned to the respective ENE (through the exercise of an option by the first shipowner ENE for the repurchase of the ship – purchase option).

The owners of the above ships (who are currently registered as owners in the Registry) are subsidiaries and/or affiliates of Oaktree Capital Management ("Oaktree") which is the funding company. The ENEs are the charterers by bareboat charterparty which own the ships, the crews of which, as well as the captain, are appointed by said companies. The ships are then chartered by time-charterparties to third-party charterers, usually with long-term contracts.

The above ships are managed by the Liberian company Eletson Corporation *(hereinafter:* **"ELETSON CORPORATION"),** which is also a 100% subsidiary of ELETSON HOLDINGS, as mentioned above, and maintains a lawful establishment, in accordance with the provisions of Article 25 of Law 27/1975 and Law 89/67, in Greece at 118 Kolokotroni Street, Piraeus, with Tax Registration Number, 098035979/ Public Tax Service of Ships of Piraeus.

**A.2. ELETSON HOLDINGS share capital structure.**

According to the recent Statement of the Directors, Nominated Employees and Shareholders of the company ELETSON HOLDINGS, dated 09/26/2024, the share capital amounts to 10,000 class A nominal shares, with no par value.

**Shareholders** of **ELETSON HOLDINGS** are the following foreign shipping companies, which belong to **Greek families, namely:**

**a.** The foreign shipping company "**LASSIA INVESTMENT COMPANY**" of the family of Askarina Karastamati ("Karastamati"), holder of 3,072 shares, representing **30.72% of the** share capital of the Company;

3

[logo]

    **b.**    The foreign shipping company "**FAMILY UNITY TRUST COMPANY**" of the family of Vasilis Kertsikoff ("Kertsikoff"), holder of 3,072 shares, representing **30.72% of the** share capital of the Company;

    **c.**    The foreign shipping company "**GLAFKOS TRUST COMPANY**" of the family of Vasilis Hatzieleftheriadis ("Hatzieleftheriadis") holder of 3,072 shares, which represent **30.72% of the** share capital of the Company;

    **d.**    The company "**ELAFONISSOS SHIPPING CORPORATION" of the family of Nikos Zilakos ("Zilakos"),** applicant herein, holder of 392 shares representing **3.92% of the** share capital of the Company, and finally,

    **e.**    The foreign shipping company "**KEROS SHIPPING CORPORATION**" of the family of **Vasiliki Androulaki ("Androulaki"**), applicant herein, holder of 392 shares, which represent **3.92% of the** share capital of the Company.

ELETSON HOLDINGS, therefore, belongs to foreign companies also belonging to Greek ultimate beneficiaries, which has been incorporated under the laws of Liberia and has the center of its main interests in Greece, specifically in Piraeus of Attica, at 118 Kolokotroni Street.

**A.3. Eletson Gas LLC, a company incorporated by ELETSON HOLDINGS and Blackstone Tactical Opportunities.**

In early 2013, **ELETSON HOLDINGS** entered into a commercial arrangement with the foreign investment fund **Blackstone Tactical Opportunities _(hereinafter Blackstone)_**, which manages alternative investments to establish a joint venture, focusing on the **liquid propane gas** (LPG) market.

Indeed, in fulfilling the above objective, the new company Eletson Gas LLC (**_hereinafter referred to as "Eletson Gas"_**) was established by Eletson Holdings and by Blackstone[1]'s investment fund, which was incorporated as a limited liability company (LLC) under the laws of the Marshall Islands, which provide for the establishment of a limited liability company (LLC) by an **agreement to establish a limited liability company (LLC Agreement** dated April 12th 2013, which was amended

---

[1] In fact, Blackstone participated in Eletson Gas LLC through its controlled legal entities, namely: (i) Blackstone Family Tactical Opportunities Investment Partnership (CAYMAN) ESC L.P., (ii) Blackstone Tactical Opportunities Investment Partnership (CAYMAN) SMD L.P. and (iii) BTO Eletson Holdings L.P.

[logo]

and was codified on August 16, 2019 – Amended and Restated LLC Agreement – to which an additional amendment was made on April 16, 2020). Shareholders of Eletson Gas were, on the **one hand**, ELETSON HOLDINGS, holding the common shares/units, and in particular 13,000,000 common shares which were and are the sum (100%) of the common shares, and *on the other hand* the investment fund Blackstone, holder of the preferred shares/units, i.e. having priority over the distribution of dividends and, under conditions, decisive power over the company, in particular 8,811,080 preferred shares which were the sum (100%) of the preferred shares. ELETSON CORPORATION also became a shareholder in Eletson Gas, being the managing company of the ships, by issuing to them certain "special membership units".

At **Eletson Gas**, **ELETSON HOLDINGS** contributed in-kind **five (5) new pre-existing LPG ships**, all under Greek flag, and in particular the ships ANAFI, NISYROS, TILOS, TELENDOS and SYMI, and held all common shares (stock shares), and **Blackstone** contributed significant capital to build/purchase **another nine (9) state-of-the-art liquid gas ships, with the capacity to carry ethylene products** as well, and held all **preferred shares** which, however, in accordance with the "LLC Agreement" *(hereinafter: "LLCA")* had increased rights and **controlled Eletson Gas LLC,** that is, they could make important corporate decisions and appointed the majority of the BoD members.

Accordingly, in early 2022, **Eletson Gas** owned, directly or indirectly, **fourteen (14) liquefied gas transport ships**, thereby making its fleet the second largest on the market - the first largest is Unigas' fleet, a major and direct competitor of ELETSON. **Eletson Gas'** revenues derive primarily from the exploitation of said ships. **ELETSON CORPORATION** (a subsidiary of ELETSON HOLDINGS) together with **EMC GAS Corporation** (as mentioned below) are responsible for providing management services to ships directly or indirectly owned by **Eletson Gas'** subsidiaries. For the management services, **ELETSON CORPORATION** receives management fees from its own subsidiary ship-owning companies. **Management fees are an asset of ELETSON CORPORATION and an obligation for Eletson Gas or their respective subsidiaries incurring the relevant cost.** Throughout Eletson's corporate relationship with Blackstone, ELETSON (HOLDINGS and CORPORATION) was managing said ships. In particular, the co-management of the above Eletson Gas' fleet was undertaken, on the one hand, by **ELETSON CORPORATION** (technical management), and on the other hand (commercial representation – monitoring-financial management) by **EMC GAS Corporation** which was established as a subsidiary of Eletson Gas, with statutory registered offices in the Marshall Islands, and was established as a shipping company under the legal framework of article 25 of Law 27/1975 and Law 89/67 (as a subsidiary of the above non-registered Eletson Gas).

5

[logo]

Today, out of these original fourteen (14) liquefied gas transport ships, **Eietson Gas currently controls and operates twelve (12)** (i.e. except the ships "SYMI" and "TELENDOS"), the exploitation of said ships is done either directly by Eletson Gas or through its subsidiaries, charterers of said bareboat charterparties. These Eletson Gas subsidiaries are not owners of the aforementioned ships only formally, since these ships have been transferred to Eletson Gas' lenders under the obtained loan by sale and lease-back financing as it was described above (see **paragraph A.1**). In fact, they act as owners in everything, and after the repayment of the loan received and interest through the payment of rents, according to the bareboat charterparties of said ships, they will also become formal owners of the ships.

**A.4. The purchase of Blackstone's share by Levona, and Levona's agreement to withdraw (by transferring its (Levona's) shares in Eietson Gas or to companies it would recommend).**

In November 2021, another investment fund (hedge fund), **Murchison Ltd** *(hereafter Murchison),* purchased its share from Blackstone (for a consideration later revealed to be just US$3 million), thereby becoming a partner (shareholder) in Eietson Gas, in the place of Blackstone. The purchase was made through an affiliate of Murchinson, which was a special purpose vehicle, Levona Holdings Ltd *(hereinafter "Levona"),* incorporated under the laws of the British Virgin Islands.

**Murchinson** and **Levona** immediately stated from the outset that they did not intend to be long-term investors but wanted to withdraw soon with a significant profit above their investment. That's why negotiations started, which took place mainly in January and February 2022 and resulted in the conclusion of a Binding Offer Letter (*hereinafter "BOL"*) between **Eletson Holdings**, **Eletson Corporation**, **Eletson Gas** and **Levona**, dated **February 22, 2022**, according to which **Eletson Gas** would pay **Levona** twenty-three million US$ ($23,000,000) (or give Levona two ships of equivalent value, and in fact the stocks of the bareboat charterers, that is, SYMI II ENE and TELENDOS II ENE) and in return Levona would transfer the shares (preferential shares) it held to **Eletson Gas**, or to entities that the latter would indicate. Meanwhile, under the same agreement, Levona would initially make a US$10 million loan, which was increased to US$14 million (of which US$12.8 million was ultimately used) so that Eletson Gas would pay its short-term obligations to lenders. This loan would be repaid in one lump sum in two years.

Indeed, on **March 11, 2022**, both the **transfer of the shares of the two companies, shipowners (ENE) of MT SYMI and MT TELENDOS** were signed, as well as other documents according to the definitions of BOL, and the beneficial shareholders of **Eletson Gas** became **Fentafon Limited, Apargo**

6

[logo]

**Limited** and **Desimusco Trading Limited (*the "New Preferred Shareholders"*)** which were designated, according to the above, by **ELETSON GAS**.

In fact, Eletson Holdings and in particular Eletson Corporation, without having a legal obligation to do so, offered to assist Levona in further reselling these ships to third parties, i.e. liquidating them, obtaining the relevant benefit. In this way, Levona's investment of three million US dollars ($3,000,000) in November 2021 had an extra-multiplying return, that is, an amount of US$23 million just a few months later.

### A.5. Levona's allegations that it had not transferred the Eletson Gas shares.

However, while communications and procedures between Eletson and Levona continued about changing the flag of the two ships and resell them to third parties; Levona (about mid-July 2022) suddenly started claiming that (while indeed the shares of ENE SYMI and TELENDOS had been transferred to them as early as March 2022) they had not transferred, to Eletson Gas, their preferential shares in Eletson Gas, and this was because according to the BOL, Eletson Gas should have followed some formal procedures for exercising an option to acquire such preferential shares, something that, according to Levona's allegations, had not been exercised / followed. Therefore, Levona began claiming at that point that both of their ships had been transferred AND that they had not transferred the preferred shares they held in Eletson Gas. In fact, Levona's conduct, in bad faith, unconventional and criminally punishable had become apparent when they attempted to sell the other twelve ships of the Eletson Gas management fleet to Eletson's major competitor, Unigas. In particular, by a Letter of Intent (LOT) purportedly signed on July 15, 2022, between the company Unigas (which is a key competitor of Eletson Gas, as already mentioned) and Eletson Gas, which was allegedly signed by a representative of Levona (who, however, was not entitled to sign in the name and on behalf of Eletson Gas) it is assumed that the sale and transfer of the other twelve (12) ships to Unigas had been agreed.

7

[logo]

Levona's unconventional conduct, contrary to good faith and morality, had basically an underlying cause, that is, **the values of the 12 LPG ships that remained under the control of Eletson Gas had begun to rise significantly** between the time the BOL was signed (that is, February 22, 2022) until Levona dramatically changed its stance (mid July 2022). The reason for the increase was the (particularly critical for the gas market) geopolitical **event of Russia's invasion of Ukrainian territories** (which completely incidentally began in late February 2022, and escalated in the months that followed). The Western world's effort to find alternatives to mining and primarily liquid gas transport (i.e. not through Russian pipelines, but through ships) **dramatically increased demand for LPG transport ships, resulting in the skyrocketing commercial value of these types of ships**. Levona, as a hedge fund with the sole pursuit of high profits, rather than simply satisfying the already increasing value of SYMI and TELENDOS it controlled since March 11, 2022, **illegally attempted to reap benefits from the rest of the Eletson Gas fleet (i.e. the 12 ships) as well**. In other words, it was not enough for Levona to have just invested $3 million and would have generated on the basis of the contractual documents at least $23 million (!) from both ships, but upon discovering the new market prospects, they tried to multiply their profits (by tens of additional millions) claiming that they still owned the preferential shares and therefore had "to gain" as a preferential shareholder from the attempt to sell the remaining 12 ships as well (!!!).

8

[logo]

## A.6. The initiated arbitration in New York.

### *A.6.1. The Arbitration Award issued in New York dated 09/29/2023 by the Arbitral Tribunal, consisting of Judge-Arbitrator Ariel E. BELEN (hereinafter referred to as "the Arbitration Award dated 09/29/2023").*

Immediately following the aforementioned incident of the attempted transfer of the twelve (12) ships of Eletson Gas from Levona to the competitor company Unigas, **Eletson Holdings** and its subsidiary, **Eletson Corporation** appealed, **on 07/29/2022** to arbitration in New York pursuant to the arbitration clause contained in and entered into in the "LLC Agreement", in order to resolve the dispute between them and **"Levona"** as to whether the shares/units had been transferred to Eletson Gas or to companies they would indicate, and in particular their preferred shares (shares/units) held by Levona in Eletson Gas as well as related corporate disputes arising from the "LLC Agreement" (LLCA).

During the arbitration, **serious illegal acts and violations of morality by Levona/Murchinson** were revealed, which occurred before they had even acquired the shares (units) of Blackstone in Eletson Gas, after the acquisition and during the course of arbitration, such as, among other things, that Levona/Murchinson fraudulently: **a)** bribed a high-ranking official of Eletson (the Chief Financial Officer) to act against the interests of the latter, **b**) breached the confidentiality obligations of LLCA, **c)** interfered with the relationships of Eletson Gas with its lenders, causing the seizure of ships of Eletson Gas, **d)** falsified evidence by creating purported meeting minutes of the Board of Directors dated March 10, 2022, after the commencement of the arbitration, e) conspired with the lawyers of Eletson Gas (Watson Farley & Williams, hereinafter "WFW") against the interests of the latter.

In fact, the disclosure, during the Arbitration, that Peter Kanelos, a senior official of Eletson, had been bribed by Murchinson/Levona, led Eletson Holdings and Eletson Corporation to **file a complaint** against Peter Kanelos before the **Piraeus Misdemeanor Prosecutor. Following this, a <u>criminal prosecution was brought against Peter Kanelos (former Eletson's financial director) in July 2024 for the offenses of a) repetitive breach of professional confidentiality with consequential damages, b) repetitive breach of professional confidentiality, and c) repetitive receipt of bribes in the private sector. The criminal proceedings are still in progress</u>**.

[logo]

Finally, on **September 29, 2023**, the critical arbitration award was issued, according to which **Judge-Arbitrator Ariel E. BELEN** <u>acknowledged the conduct, in bad faith and contrary to morality, of the</u> <u>side of Murchinson/Levona and the violation by LLCA on behalf of them in various ways, and</u> <u>vindicated the side of Eletson (HOLDINGS and CORPORATION), in the sense that Levona had</u> <u>indeed transferred its (privileged) shares it held in Eletson Gas to Eletson Holdings or to third party</u> <u>companies designated by the latter (nominees), that is, to the New Preferential Shareholders, who, as</u> <u>already mentioned, were the Cypriot companies Fentalon, Apargo and Desimusco.</u>

In particular, as discussed in **CHAPTER "*VIII. CONCLUSION AND FINAL ARBITRATION AWARD*"** of the **Arbitration Award dated 09/29/2023**, Judge-Arbitrator Ariel E. BELEN ruled positively on the complaint of **ELETSON HOLDING** and **ELETSON CORPORATION** and issued his aforementioned award, acknowledging that[2]:

"***A. Acknowledging award***

*The following are hereby acknowledged:*

*1. Eletson effectively exercised the redemption option granted through the BOL dated February 22, 2022 on March 11, 2022, and any purported condition for exercising that right was either satisfied or waived.*

***2. As of March 11, 2022, Defendant Levona had no right of participation in the company Eletson Gas.***

*3. The Company exercised its rights under the BOL to appoint three entities – Fentalon, Apargo and Desimusco (the Preferential Shareholders) – associated with the principals of the Plaintiffs as the parties who would receive the preferred shares of the Company which were previously held by Levona.*

*4. The preferred shares in the Company were transferred to the Preferred Shareholders, effective as of March 11, 2022, and the Preferred Shareholders are permitted assignees under the LLCA. They*

---

[2] It is noted that in the Arbitration Award dated 09/29/2023, where **"ELETSON" or "Plaintiffs"** is mentioned, it means **"ELETSON HOLDINGS"** and **"ELETSON CORPORATION",** a subsidiary of the first, which happen to be also the Complainants (Plaintiffs) and where **"Company"** is mentioned, it means **"Eletson Gas".**

[logo]

*have agreed to be bound by this award and by each award issued thereon.*

*5. Eletson Holdings and Eletson Corporation never owned any of the company's preferred shares.*

**6. The shares of the subsidiaries controlling the ships Symi and Telendos were transferred to Levona on March 11, 2022, as consideration for the Call Option in relation to the BOL.** *As of Mach 11, 2022, Levona reserves all rights relating to the ownership of the subsidiaries of those ships,*

*7. The Injunction Decision shall remain in effect until a final judgment is issued on any Arbitral Award or any other award of said arbitrator.*

*8. Levona, Murchinson and Pach Shemen, are each alter ego of the other with respect to each event proven in the present case, and any kind of compensation granted hereunder. Any reference to Levona herein therefore concerns all alter egos, and for the avoidance of doubt, any decisions against Levona also concern any alter ego thereof.*

*9.* ***Levona breached the LLCA and its related obligations****, including, without limitation, common law obligations and contractual obligations to Plaintiffs and the Company, in at least* ***the following ways****:*

> ***i.*** *Bribing an employee of Eletson Corporation and a representative of the Company, Peter Kanelos, so that he would disclose confidential information of the Company,*
> ***ii.*** *Breaching confidentiality obligations by disclosing confidential Company information to third parties, while failing to take steps to retrieve such information, and then deceiving the Plaintiffs and the Company about said breaches after becoming a shareholder in the Company,*
> ***iii.*** *Actively engaging in illegal conduct, which led the Company's funders to turn against the Company and the Plaintiffs, including but not limited to, by causing the seizure of five ships of the Company and not disclosing such infringing conduct to Eletson or the Company after becoming a shareholder in the Company;*

11

[logo]

*iv. By not recognizing that Eletson has fully complied with the terms of the BOL Call Option and by not acting in good faith, silencing its purported belief that the Company could or may not meet the terms of the BOL;*

*v. Claiming to act on the Company's behalf in its business dealings with third parties, including, among other things, by attempting to sell the Company's assets to its main competitor, Unigas, and concealing such breach from the Plaintiffs;*

*vi. By unfairly threatening Eletson and its associated officers and directors, including, among other things, by suing them;*

*vii. By improperly claiming to have taken control of the board of directors of the Company after March 11, 2022;*

*viii. By improperly asserted that they were directing the Company's day-to-day operations after March 11, 2022;*

*ix. By improperly claiming that they are pursuing control of the Company's assets after March 11, 2022;*

*x. By improperly alleging that they convened and held meetings of the Company's Board of Directors without following appropriate procedures, and for unlawful and improper purposes of approving illegal and improper conduct after March 11, 2022;*

*xi. By breaching their obligations under the LLCA, including without limitation, by claiming to terminate the management agreements Eletson Corporation has with the Company's subsidiaries, that they are modifying the management of the Company's subsidiaries, **excluding Eletson Corporation from communications with the Company's funders (violations) that Levona knew were anti–contractual and violated the LLCA. [...]"***

**Subsequently, the same Arbitration Award dated 09/29/2023 as above, of Judge-Arbitrator Ariel E. BELEN awarded the amounts mentioned to them as: a) compensation for direct damages; and b) punitive damages, in addition to attorneys' fees, costs, expenses and additional interest, and specifically acknowledged that:**

[logo]

## "B. Compensation for direct damages

*Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, will pay $43,455,122.21 in compensation as follows:*

1. *$21,777,378.50 to be paid to Eletson Gas as compensation for direct damages for improper seizure of the Eletson Gas' ships, which includes default interest at 10% from the date of the seizures (or the approximate date the costs incurred) up to January 2023;*

2. *$19,677,743.71 which must be paid to the Preferred Shareholders, which consist of lost profits (EBITDA) due to Levona's unjust enrichment arising from the exploitation of the Symi and Telendos ships from March 11, 2022, without the concurrent transfer of the preferred shares, which include pre-trial interest until January 2023;*

3. *$2,000,000 to be paid to Eletson Gas as compensation for direct damages arising from the other breaches of the contract by Levona, with a preliminary interest of 10% from the date of this Interim Arbitration Award until the repayment of the compensation awarded by this award or the confirmation of this award by a competent court, depending on which day is earliest.*

4. *The entities referred to above under B.1 and B.2 respectively are also awarded default interest on the principal amount of the compensation referred to in paragraph B.1. above (compensation for unlawful seizures) and paragraph B.2. above (compensation for lost profits due to unjust enrichment of Levona) at a rate of 10% from 30 January 2023 until the earlier of either the payment of the compensation or the confirmation of the (present) award by a competent court.*

## C. *Punitive damages*

*Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, are liable to pay punitive damages in the total amount of $43,455,122.21, as follows:*

[logo]

1.  *$23,777,378.50 to be paid to Eletson Gas; and*

2.  *$19,677,743.71 to be paid to the Preferred Shareholders.*

**D.** **_Attorneys' Fees, Costs, Expenses and Additional Interest_**

*Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, will pay:*

1.  *Solicitors' fees, costs and expenses incurred to date in connection with this arbitration, the Bondholders' Complaint and the Bankruptcy pursuant to Article 12.14(8) of the LLCA and Rule 24(5) of the JAMS, as follows:*

    i.  *Attorneys' fees, costs and expenses due in connection with this arbitration amounting to $9,590,222.99.*

    ii. *An additional amount of $22,366.10, which represents additional costs of JAMS incurred in connection with this arbitration from the time Eletson filed the Initial Acknowledgment, and with respect of which Eletson paid both the share corresponding to them too the same as well as the share corresponding to the Defendant.*

    iii. *Attorneys' fees, costs and expenses due in connection with the Bankruptcy and the Bondholders' Claims of $3,007,266.20;*

2.  *Additional default interest on the principal amount of the compensation as awarded by the Corrected Interim Arbitration Award by 31 August 2023, amounting to $2,496,081.88, which shall be paid as follows:*

    i.  *To Eletson Gas: $1,319,163.14.*

    ii. *To the Preferred Shareholders: $1,176,918.74.*

3.  *Additional default interest on the principal amount of the compensation from August 31, 2023 until the date of payment of the amount due or the date of confirmation of this Final Arbitration Award, as enforceable by a court of competent jurisdiction, whichever date is earlier, and calculated using the formula set forth above in this Final Arbitration Award; and*

14

[logo]

4.  *Additional default interest on fees, costs and expenses awarded by this Final Arbitration Award; from the time of publication of this Final Arbitration Award until the date of payment of the amounts due or the date of confirmation of this Final Arbitration Award as enforceable by a competent court, whichever date is earlier, and calculated using the formula set out above in this Final Arbitration Award."*

### A.6.2. The Judgment issued in New York dated 04/19/2024 by the U.S. District Court - Southern District of New York, consisting of Judge Lewis J. LIMAN, amending the Arbitration Award dated 09/29/2023. – The decision of the same Judge Lewis J. LIMAN on the suspension of the confirmation of the Arbitration Award dated 09/29/2023 until 11/12/2024[3].

Subsequently, on 19.10.2023 the aforementioned Appellants, ELETSON HOLDINGS and ELETSON CORPORATION, appealed to the U.S. District Court – Southern District of New York, to the application for **confirmation of the aforementioned Arbitration Award dated 29.09.2023 pursuant to article 207 of the Federal Arbitration Act (Federal Arbitration Act) encoded as 9 U.S.C. §§ 1-16.**

**The above article 207 of 9 U.S.C. §§ 1-16 specifically states the following:**

*"§207. Award of arbitrators; confirmation; jurisdiction; proceeding*

*Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention» and faithfully translated:*

---

[3] Prior to the issuance of the final arbitration award, an interim arbitration award has also been issued, which was then corrected. The arbitration award confirmation was initiated on the basis of the interim corrected arbitration award. See below: page 18

[logo]

*"§207. Award of arbitrators; confirmation; jurisdiction; proceeding*

*Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter **for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.***"

Although the arbitration award confirmation procedure is, in accordance with the New York Convention, to which the above article refers, for the confirmation of arbitration awards, a formal and speedy procedure, nevertheless, Levona attempted to delay the proceedings in every possible way by testifying – inter alia – before Judge LIMAN,

**a.** That there is a relevance (Related Case Statement) of the disputed award confirmation process and the proceedings before the bankruptcy court for the bankruptcy of ELETSON HOLDINGS, which it had in the meantime commenced against them with fraudulent acts, and we will refer in the immediately next chapter, as well as

**b.** That the case of the confirmation of the arbitration award should be referred (referral) to the above Bankruptcy due to its relevance.

The above allegations and claims of Levona were dismissed by Judge LIMAN, however, in view of the number of legal documents filed by the other party, Judge LIMAN ordered the parties to file further briefs, in which to account for the undisputed material facts, and subsequently directed a hearing to take place on January 2, 2024.

Thereafter, on **02/09/2024**, Judge LIMAN issued a decision pursuant to which **the above Arbitration Award dated 09/29/2023, by the Arbitration Court, consisting of Judge-Arbitrator Ariel E. BELEN, canceling only some of its provisions, <u>but without amending the above amounts awarded and their beneficiaries. In particular, considered the following in the aforementioned decision</u>:**

*"The Court affirms the judgment as referred to in Dkt No. 67-58, commencing on page 95, including awarding damages and punitive damages and awarding pre-trial attorneys' fees, costs, expenses and interest, with the following exceptions:*

16

[logo]

- *Paragraphs A.7, A.8, A.10(i) and A.10(iii) are voided.*

- *All damages awarded against Murchinson and Pach Shemen are voided.*

- *All damages awarded, including compensation and punitive damages, based on violations of the order to uphold the status quo, are voided.*

- *All attorneys' fees, costs and expenses awarded in connection with the non-voluntary bankruptcy petition and the bondholder trial are voided."*

At the same time, Judge LIMAN asked the parties to file a proposed form of judgment (**Proposed Judgment**). In view of the fact that Judge LIMAN in his judgment dated February 9, 2024 voided all "*compensation, including punitive damages*, *based on Status Quo Injunction violations*," Levona filed a proposed judgment and suggested that all the amount awarded as punitive damages be voided (i.e., the amount of US$43,455,122.21), while on the contrary, the side of Eletson (HOLDINGS and CORPORATION) claimed that the punitive damages should remain in their entirety, because Judge-Arbitrator Ariel E. BELEN had numerous other reasons to award this amount of punitive damages, and in any case the issue of the percentage of punitive damages that should be ratified was an issue that only the Arbitrator himself had the power to adjudicate.

Following this, Judge LIMAN issued a decision on **April 19, 2024**, by which he referred to Judge-Arbitrator Ariel E. BELEN the relevant matter, requesting clarification as to whether part of the amount awarded as punitive damages concerns the violations of Status Quo Injunction, and in the event of a positive response, what amount corresponds to these violations.

On **August 9, 2024**, an award was issued by Judge-Arbitrator Ariel E. BELEN in regard to the matter of referral, in which **he accepted that the entire amount of the punitive damages ($43,455,122.21 USD) must be ratified**, as he held that no part of the amount that had been awarded as punitive damages corresponded to violations of Status Quo Injunction, and this is because there were many other factors that had led him to determine that he had to award such high punitive damages against Levona.

[logo]

Following the relevant instructions of Judge LIMAN, the parties filed further documents and letters upon Levona's application for an amendment opposing the application for confirmation of the arbitration award and the counter-claim to annul the arbitration award.

On **September 6, 2024**, LIMAN J. issued a judgment **permitting Levona to amend their opposition** to the application for confirmation of the arbitration award. At the same time, Judge LIMAN allowed the production of documents (discovery) again in order to investigate the matter of alleged fraud in the context of the Arbitration.

A case management plan was then set up, which determined what actions they would take and within which deadlines.

Furthermore and more recently, on **October 25, 2024**, two **final judgments** were issued by the U.S. Bankruptcy Court - Southern District of New York on the open-ended proceedings against the Corporation (see in detail below, **under A.7.),** which dismissed the debtors' oppositions to the claims of certain creditors and **approved the reorganization plan proposed by the Creditors in connection with the ELETSON HOLDINGS Bankruptcy.**

**In view of these two judgments of the Bankruptcy Court, and given that the management of ELETSON HOLDINGS, as well as its subsidiary, ELETSON CORPORATION, of the two companies, that is, that were part of the Arbitration and the arbitration award validation process; is expected to pass to the Creditors (i.e. Pach Shemen, Levona, Murchinson), if these (awards) are recognized - implemented; Levona submitted a letter before Liman requesting the suspension of the confirmation procedure of the Arbitration Award dated 29.09.2023.**

Although Eletson's side responded to the above letter with convincing arguments, on 30 October 2024, LIMAN J. issued a decision on **31 October 2024 suspending the arbitration award confirmation process until 12 November 2024, a day on which a Status Conference will take place**.

**It is clearly concluded from the above that ELETSON HOLDINGS, has a direct legitimate interest in attending the (Status Conference) hearing held on 12.11.2024 in the U.S. District Court - Southern District of New York; consisting of Judge Lewis J. LIMAAN, in order to counter objections, allegations and impediments brought by the Respondent Levona in the confirmation procedure of the Arbitration Award issued in New York dated 29.09.2023 of the Arbitral Tribunal, consisting of the EETT Judge-Arbitrator Ariel E. BELEN and hereinafter to request the declaration of its enforceability, to take further action against Levona.**

18

[logo]

In addition, **ELETSON HOLDINGS**, as well as its subsidiary, **ELETSON CORPORATION**, have a direct legitimate interest in requesting the recognition of the above **issued in New York from 29.09.2023 of the Arbitration Award of the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN** and the compliance of the respondent, "Levona", to all the provisions of her Order, **as well as the declaration** of its enforceability **under the provisions of the New York Convention, on the territory of another state than the one issued, including in Greece, where Levona holds property.**

**A.7. The in bad faith method of the bankruptcy petition of ELETSON HOLDINGS by its opposing party to the Arbitration, Levona and its other affiliated companies.**

Murchinson and Levona (consisting of one and the same), when it was realized that they were increasingly defeated in the arbitration, which was established as above by the Arbitration Award dated 29.09.2023, put in place a plan to prevent the **issuance** of the above Arbitration Award by filing an application for the declaration of ELETSON HOLDINGS **involuntary bankruptcy**. In particular, Levona, acting through another affiliate (in fact, absolutely the same interests) of its own special purpose (special purpose vehicle), of **Pach Shemen LLC** (which in some correspondence arose from discovery, they were called Levona II), purchased old bonds issued by ELETSON HOLDINGS and had been repaid in large part by selling all the ships securing these bonds and then filed an **petition for involuntary bankruptcy of ELETSON HOLDINGS (pursuant to chapter 7 (chapter 7) of the American Bankruptcy Code).** Given that a prerequisite for the filing **of an involuntary bankruptcy petition** before the American Bankruptcy Court is for it to be filed by three creditors, co-applicants with **Pach Shemen** were two other companies, namely **VR Global** and **Alpine Partners**, who had also purchased, bonds issued by ELETSON HOLDINGS. It is notable that Pach Shemen appeared as ELETSON HOLDINGS bondholder by making an illegal agreement to purchase from the old bondholders approximately US$ denomination. US$183 million for the embarrassing price of approximately US$2 million (plus some additional returns were it to emerge winner of the Arbitration). **That is, Levona through the alter ego of Pach Shemen LLC spent just US$2 million but sought repayment of US$183 million and filed for bankruptcy against her opposing party in the then pending ELETSON HOLDINGS Arbitration (!).**

19

[logo]

The submission of said petition, results, under US (federal) bankruptcy law, in the automatic stay of all proceedings and arbitrations (individual prosecutions), and that is why **the aforementioned arbitration was stopped**. However, following the intense reaction of ELETSON HOLDINGS, which sought to continue the arbitration, the Pach Shemen /Levona /Murchinson side was forced to come to an agreement that was converted into a court order (stipulation), and thus the U.S. Bankruptcy Court issued a decision on 03/17/2023 and allowed said arbitration to continue. The Arbitration proceedings lasted for about two weeks in May 2023, by examining a series of witnesses on both sides, and then the Arbitration Award dated 09/29/2023 \was issued in New York by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN, as detailed above **under A.6.1.**

Subsequently, LEVONA constantly causes stifles and invokes impediments to the **confirmation** of the award dated 09/29/2023, the most recent being the suspension of its confirmation procedure by Judge LIMAN until 11/12/2024, as mentioned in detail above **under par. A.6.2.**

In more detail:

20

[logo]

_**A.7.1. The Judgment of Voluntary Bankruptcy (Chapter 11) of ELETSON HOLDINGS and the other companies, issued in New York on**_ 10/25/2024 by the single-member U.S. Bankruptcy Court - South District of New York, consisting of Judge John P. MASTANDO.

While ELETSON HOLDINGS and ELETSON CORPORATION had already appealed, as of **07/29/2022** to arbitration against Levona (see above **under par. A.6.1.**), on **March 7, 2023**, petitions of involuntary (forced) bankruptcy (chapter 7 of the US Bankruptcy Code) were filed before the Bankruptcy Court of the Southern District of New York *(hereinafter the* **"Bankruptcy Court")** by three purported creditors of them, and in particular Pach Shemen LLC, VR Global Partners and L.P., Alpine Partners L.P. *(hereinafter the* **"creditors")** against ELETSON HOLDINGS, as well as against its co-debtors, Agathonisos Finance LLC and Eletson Finance (US) LLC *(hereinafter the* **"purported Debtors")**

On March 8, 2023, Levona sent a letter to Judge-Arbitrator Ariel E. BELEN, informing him of the filing of involuntary bankruptcy petitions against ELETSON HOLDINGS which have resulted, under U.S. bankruptcy law, in all proceedings concerning Eletson Holdings and its subsidiaries (such as Eletson Corporation) being automatically stayed. Indeed, on March 10, 2023, Judge-Arbitrator Ariel E. BELEN stayed the aforementioned arbitration pending further judgment or notice by the Bankruptcy Court.

On **April 17, 2023**, upon agreement of the parties ratified by the Bankruptcy Court, the latter lifted the automatic suspension for the limited purpose of continuing arbitration under the terms of the related agreement (stipulation) between the parties.

In the meantime, on April 14, 2023, the alleged Debtors filed an application for dismissal of the above involuntary bankruptcy petitions.

Finally, the arbitration continued, as mentioned above, with an extensive hearing on 29 July 2023, the Interim Arbitration Award (**Interim Award**) was issued by Judge - Arbitrator Ariel E. BELEN, and on August 15, 2023, the Corrected Interim Arbitration Award (**Corrected Interim Award**) was issued, by which certain non-substantial corrections were made to the Interim Award.

[logo]

At the same time, however, the above involuntary bankruptcy proceedings of "ELETSON HOLDINGS" and the remaining two (2) companies of its interests continued before the Bankruptcy Court. Given the then conditions, the ongoing pressures they received from the opposing side (Levona), which by continuous tricks hindered the progress of the Arbitration and in order for ELETSON HOLDINGS to have control of its property, at least until the issuance of the expected arbitration award, on September 9, 2023, upon agreement of the parties ratified by the Bankruptcy Court, the **involuntary** bankruptcy proceedings (based on capital (chapter) 7 of the American Bankruptcy Code) were amended to **voluntary** bankruptcy proceedings (based on capital (chapter) 11 of the American Bankruptcy Code).

Subsequently, and upon manipulations, in bad faith, of Levona and its affiliated companies, Murchinson/Pach Shemen, two decisions were issued on **10/25/2024** by the Bankruptcy Court of New York, consisting of John P. MASTANDO J, with which the oppositions of the alleged debtors were dismissed (ELETSON HOLDINGS, Agathonisos Finance LLC and Eletson Finance (US) LLC) against the claims of certain creditors (by Pach Shemen LLC; VR Global Partners L.P., Alpine Partners L.P.) and the reorganization plan proposed by the Creditors was approved.

_**A.7.2. The Order of the Bankruptcy Court of the U.S. - Southern District of New York, comprised of Judge John P. MASTANDO, which was**_ issued in New York on 11/04/2024 confirming the Voluntary Bankruptcy Decision (Chapter 11) dated 10/25/2024 for ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan.

On **11/04/2024**, the **Order** of the New York Bankruptcy Court, consisting of Judge John P. MASTANDO, was issued, confirming the above voluntary bankruptcy decision (Chapter 11) of ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan (FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING PETITIONING CREDITORS' AMENDED JOINT CHAPTER 11 PLAN OF ELETSON HOLDINGS INC. AND ITS AFFILIATED DEBTORS).

**Paragraph 25** of the above Order explicitly states:

[logo]

> *"**Final Order**. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon entry of the Confirmation Decision.»* and in faithful translation:
>
> *"Final order. This Confirmation Order is a final order **and the period in which an appeal must be filed shall commence upon entry of the Confirmation Decision.**»*

That is, in accordance with the provisions of the U.S. Bankruptcy Code, the deadline for ELETSON HOLDINGS and the other debtor companies to file appeal is **14 days from the issuance of the decision and begins from the issuance of the decision (article 8002 Federal Rules of Bankruptcy Procedure)**, and therefore it had to be filed by **11/08/2024**, since the above decision of the Bankruptcy Court was issued on 10/25/2024, and was made, after the relevant introductory appeal application was filed before the competent Court on 11/07/2024.

### A.7.3. Conclusions. - Levona/Murchinson/Pach Shemen's bad faith conduct in the manipulation of the bankruptcy of ELETSON HOLDINGS. – Its reasons.

From a number of documents, and as already adjudicated by Judge-Arbitrator Ariel E. BELEN in his final arbitration decision award dated 09/29/2023, the conduct of Levona, as well as its affiliates Murchinson and Pach Shemen, for which, indeed, the aforementioned Arbitrator mentions characteristically that **"each is an alter ego of the other", against ELETSON HOLDINGS, is entirely illegal, unconventional, unethical and totally in bad faith** [see in detail above **under A.6.1.**].

Their bad faith conduct led to the bankruptcy of ELETSON HOLDINGS, fully manipulated by them, which, although it was vindicated in the Arbitration Award dated 29.09.2023, was brought to a state of purportedly voluntary bankruptcy by actions of Levona/Murchinson/Pach Shemen and the other companies of its interests.

The manipulation, in bad faith, of the bankruptcy of the Company by Levona/Murchinson/Pach Shemen is proven by the following:

[logo]

### *a. Lack of active legalization to file an involuntary bankruptcy petition.*

Creditors Pach Shemen LLC, VR Global Partners L.P., Alpine Partners L.P. failed to investigate whether they themselves were eligible for active legalization to file a petition for involuntary bankruptcy of the Company under the American bankruptcy code.

In particular, Murchinson/Pach Shemen and Alpine Partners, the two of the three companies that jointly filed a petition for involuntary bankruptcy, were aware, at the time they filed their petitions for the involuntary bankruptcy of ELETSON HOLDINGS, of the existence of the Second **Restructuring Support Agreement (the "Second RSA")**[4] and its contents. This agreement was intended to maintain Eletson Holdings' stability and orderly operation and for this reason it included important binding clauses, such as clauses prohibiting the manipulation of insolvency proceedings and clauses restricting the transfer of bonds.

Furthermore, the third of the companies jointly seeking the involuntary bankruptcy of ELETSON HOLDINGS, VR Global, as a signatory to the OCM Agreement (**the "OCM Stipulation Agreement"),**[5] was also aware of additional restrictions which prohibited the transfer of bonds to parties that had not signed accession to the OCM Agreement itself.

---

[4] **Note:** The Second RSA is an agreement signed on October 29, 2019, between the Debtors, certain shareholders of Eletson Holdings and certain holders of more than 80% of New Bonds ("Consenting Bondholders"). The Second RSA included restrictions on the transfer of bonds, indicating that none of the Consenting Bondholders will be able to sell, transfer, assign, mortgage, pledge, confer participation rights or otherwise dispose of their interests in the New Bonds; without the transferee having signed a Second RSA inclusion at least three days prior to the transfer, otherwise the transfer would be deemed void and without any force or effect. In addition, the Second RSA contained an enforcement clause, which granted a right to a non-infringing party to demand "specific execution and interference or other equitable relief as remedy for any such breach, including, but not limited to, an order by the Bankruptcy Court or other competent court requiring each party to immediately comply" with any of their obligations under the Second RSA.
Also, prior to the Second RSA, the First Restructuring Support Agreement (the "First RSA") was signed on June 24, 2019, between the Debtors, certain of the Debtors' shareholders and guarantors, and an ad hoc group of bondholders, which defined the terms for the restructuring of the Debtors' obligations under the New Bonds and which was terminated on August 9, 2019, by the ad hoc group of bondholders.

[5] **Note:** The OCM Agreement is an agreement by which the Debtors obtained the consent of the majority of Bondholders, which consent was required by the Second RSA for the refinancing of the ships' charterparties. With this consent they then proceeded to refinance certain ship charterparties in cooperation with OCM Maritime Thames LLC, OCM Maritime Autumn LLC, OCM Maritime Rhine LLC and OCM Maritime Yukon LLC.
OCM companies are affiliated companies with the investment fund Oaktree Capital Management.

In addition, the OCM Agreement: (i) includes a preamble stating that "Ellison Parties and Holders are parties to the particular Restructuring Support Agreement dated October 29, 2019," (ii) prohibits bondholders from selling, assigning, transferring, mortgaging or otherwise disposing of their New Bonds unless, "as a condition of any such transaction, the recipient" signs their inclusion in the OCM Agreement; and (iii) provides that any disposition of New Bonds, as mentioned above, is void from the outset if no enrollment is signed.

[logo]

Therefore, the filing of a petition for the involuntary bankruptcy of ELETSON HOLDINGS by the above creditors, without investigation and without ascertaining the legality of their claims, constitutes a fundamental contradiction to morality.

### b. Bankruptcy manipulation scheme to gain advantage in a pending Arbitration.

Furthermore, another reason that makes the Company's bankruptcy manipulated and contrary to morality are the true causes and purpose for which involuntary bankruptcy petitions were filed.

In particular, the above involuntary bankruptcy petitions were not filed for the purpose of financially restructuring Eletson Holdings, **but were intended to gain a strategic advantage in the arbitration proceedings that had already been commenced between Eletson Holdings and Eletson Corporation on the one hand as plaintiffs, and Levona (an affiliate of Murchinson), on the other hand as defendant.**

During all stages of the bankruptcy proceedings, from negotiating with the previous holders of the bonds issued by Eletson Holdings and the filing of petitions for involuntary bankruptcy, through the issuance of the final judgment of the Bankruptcy Court in the context of the voluntary bankruptcy proceedings (under chapter 11 of the American Bankruptcy Code), Pach Shemen (i.e. still an affiliate of Murchinson) played a pivotal role. Pach Shemen, by offering financial incentives and providing legal and financial support to the rest of the participants in the bankruptcy process, created a matrix of control and influence that allowed them to control the progress of the process, with the sole purpose of serving their own interests (i.e., the interests of Murchinson). For example, Murchinson/Pach Shemen, during the negotiation stage with bondholders, informed the latter that Murchinson (through its affiliate, Levona) *was "already in a dispute with Eletson" and "searched for any potential pressure point to improve the situation in the Gas arm"*. In fact, the final agreement that arose between Murchinson/Pach Shemen and the bond sellers provided that "*an additional $500,000 would be paid to bond sellers if the arbitration were terminated in our interest in respect of Eletson Gas and we would be able to exercise our rights as Preferred Shareholders to sell the Eletson Gas and/or the company (Eletson Gas) ships without legal intervention."*

[logo]

Therefore, the acquisition of the Bonds never involved possible financial returns of that investment. Rather, Murchinson/Levona/Pach Shemen's common goal was to manipulate the bankruptcy proceedings for their benefit in arbitration and gain control of Eletson Holdings and through them, the control of Eletson Gas. In fact, Murchinson/Pach Shemen/Levona attempted to use information obtained through the bankruptcy proceedings before the U.S. Bankruptcy Court for their benefit in Arbitration.

### *c. Initiation of bankruptcy proceedings based on disputed claims.*

Finally, another reason that makes the bankruptcy of ELETSON HOLDINGS one in bad faith and manipulated, is that it was caused on the basis of disputed claims.

The filing of an involuntary bankruptcy petition of an obligor before a U.S. Bankruptcy Court must be based on **actual and undisputed claims.**

However, in this case, the above (purported) **Creditors were aware, at the time of filing the involuntary bankruptcy petitions, of the validly contested nature of their claims.**

In fact, the same creditors included in their proposals, in support of their petitions on involuntary bankruptcy of the Company, unfounded defamatory allegations about the purported Debtors, in order to humiliate the latter, disrupt their business relationships, and damage their reputation. Among other things, the creditors unfoundedly argued that the alleged Debtors engaged in intra-group transactions and in acts contrary to morality and good faith. These allegations remained unproven throughout the bankruptcy proceedings, as expected, since they lacked any crestal of truth.

In view of the above, the knowledge of the (purported) creditors of the totally questionable nature of their claims, in combination with the unfounded defamatory allegations against the purported debtors, demonstrates their conduct in bad faith and the undeniably and unambiguously manipulated bankruptcy procedure of ELETSON HOLDINGS, instigated on behalf of Levona/Murchinson/Pach Shemen.

26

[logo]

It is clearly concluded from the above that ELETSON HOLDINGS is entitled to and has a direct legitimate interest to receive judicial protection, and in particular to support the appeal against the above Bankruptcy Decision of the U.S. - Southern District of New York comprising Judge John P. MASTANDO, which is already filed, which confirms the Decision of Voluntary Bankruptcy (Chapter 11) of ELETSON HOLDINGS and its other companies of interest dated 10/25/2024, as well as the amended plan of reorganization of the Creditors <u>before the New York Bankruptcy Court</u>, since the relevant deadline for the exercise of this (of the appeal) was to expire, as per the immediately above noted, on 11/08/2024, on the other hand to turn, with the corresponding legal remedies provided <u>before the Greek Courts</u>, in order to appeal the judgment of the Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) to which it was subjected by the U.S. Bankruptcy Court, among other reasons also due to lack of international jurisdiction of the latter, in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council. In addition, in the event that the (purported as) Creditors apply for the acknowledgment and enforcement of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter is entitled to and has a direct legitimate interest in appearing and being represented before the competent Greek Courts and protests, otherwise and as an impediment to the acknowledgment of the above Bankruptcy Decision in Greece, the lack of international jurisdiction of the US **Foreign Bankruptcy Court which issued** the Bankruptcy decision.

## B. THE RESIGNATION OF THE DIRECTORS OF ELETSON HOLDINGS. – THE LACK OF MANAGEMENT AND LEGAL REPRESENTATION OF THE COMPANY.

As mentioned above **<u>under par. A.1</u>**. **"ELETSON HOLDINGS INC."** is a Societe Anonyme (corporation) and has been incorporated under the laws of Liberia, as of 12/04/1985.

Pursuant to **Article III, Section 11. Powers *(Section 11. Powers)*** of the Company's Bylaws, the Company is governed by a Board of Directors, consisting of **eight (8) members**, in accordance with **Article III, Section 2.** Eligibility *(Section 2. Eligibility)* of the above Bylaws of the Company and at any rate **not less than three (3)** in accordance with **article 1.** Members of the same Bylaws *(Section 1. Number of BY-LAWS)* Pursuant to **article 5. Directors [VI. DIRECTORS] of the Amended and Codified Articles of Association of the Company** dated **06/29/2018**, which is registered with company's registration number

27

[logo]

C-40191 with the Ministry of Foreign Affairs of the Republic of Liberia, the Company is governed by a Board of Directors, consisting of **three (3) members**.

Until recently (i.e. until 11/08/2024) the Company was governed by **an eight-member Board of Directors**, as it appears from the **resolution, dated 12/11/2023, of** the Joint Assembly of the Members of the Board of Directors as well as the Shareholders of ELETSON HOLDINGS, and consisted of the following members:

**a)** Laskarina Karastamati, Chair and BoD Member,

**b)** Vasileios Hatzieleftheriadis, Vice President, Treasurer and BoD Member,

**c)** Vasileios Kertsikoff, Vice President and BoD Member,

**d)** Konstantinos Hatzieleftheriadis, BoD Member,

**e)** Ioannis Zilakos, BoD Member,

**f)** Eleni Karastamati, BoD Member,

**g)** Panagiotis Konstantaras, BoD Member.

**h)** Emmanuel Androulakis, as Secretary and BoD member,

While Eleni Vandorou was appointed as Assistant Secretary.

In the above Minutes, there is no provision for the Company's commitment, however, its Bylaws in **Article III, Section 5. Quorum (Section 5. Quorum of BY LAWS) provide that in order for there to be a legal formation and quorum at the meetings of the Company's Board of Directors, a majority is required, namely:**

*" Article III*

*BOARD OF DIRECTORS*

*Section 5. Quorum.*

*At any Meeting of the Board of Directors a **majority** of the Directors shall constitute a **quorum** for the transaction of business, but if at any Meeting of the Board there shall be less than a quorum present, a majority of those present may adjourn the Meeting from time to time until a quorum shall have been obtained.*

And in faithful translation:

28

[logo]

*"Article III,*

*Board of Directors*

*Section 5 - Quorum*

*At any Meeting of the Board of Directors a **majority** of the Directors shall constitute a **quorum** for the transaction of business, but if at any Meeting of the Board there shall be less than a quorum present, a majority of those present may adjourn the Meeting from time to time until a quorum shall have been obtained."*

In addition, pursuant to the Statement of Directors dated 09/26/2024, Officers and Shareholders of the Company (entered in the registration of the Company with number C-40191 with the Ministry of Foreign Affairs of the Republic of Liberia), the above Directors were published, while three (3) of them were appointed first, that is**, (a)** Laskarina Karastamati, as President, **(b)** Vasileios Hatzieleftheriadis, as Vice President and Treasurer, and **(c)** Vasilios Kertsikoff as Vice President, as **designated employees/managing officers of the Company (Officers),** to whom the power of attorney has been granted to sign on behalf of and to bind the Company.

The Designated Officers of the Company **shall be elected by the Board of Directors**, shall have an annual term of office, unless removed by the Board of Directors, as expressly provided in the Bylaws of ELETSON HOLDINGS in Article IV, Section 1. Designated Officers and Agents **(Section 1. Officers and Agents)** and Section 2. Term of Office **(Section 2. Term of Office)**. In addition, in the same Article IV, Section 3 above. Powers and Duties **(Section 3. Powers and Duties), it is explicitly provided that the Designated Officers of the Company are subject to the control of the Board of Directors, that is:**

*" Article IV*

*OFFICERS*

*Section 1. Officers and Agents.*

*[...] The Board of Directors may also appoint from time to time one or more Vice Presidents, Assistant Secretaries , Assistant Treasurers and other agents, officers, representatives and employees as may be deemed necessary. [...]"*

29

[logo]

And in faithful translation:

*"Article IV,*
*Designated Officers*
*Section 1 - Officers and Agents*
*The **Board of Directors may also appoint** from time to time one or more Vice Presidents, Assistant Secretaries , Assistant Treasurers and other agents, officers, representatives and employees as may be deemed necessary."*

*Section 2. Term of Office.*
*The term of office of all officers shall be one year or until their respective successors are chosen and qualify; Provided however that any officer elected or appointed by the Board of Directors may be removed, with or without cause, at any time by the affirmative vote of a majority of the members of the Board then in office.*

And in faithful translation:

*"Section 2. Term of Office.*
*The term of office of all officers shall be one year or until their respective successors are chosen and qualify;* Provided however that **any officer elected or appointed by the Board of Directors may be removed, with or without cause**, at any time by the affirmative vote of a majority of the members of the Board then in office.

*Section 3. Powers and Duties.*
*The officers, agents, representatives and employees of the Corporation shall each have such powers and duties in the management of the property and affairs of the Corporation, subject to the control of the Board of Directors and approval of the Shareholders entitled to vote thereon, as generally pertain to their respective offices, as well as such powers and duties as from time to time may be prescribed by the Board of Directors and the Shareholders entitled to vote thereon.*
    *The Board of Directors may require any such officer, agent, representative or employee to give security for the faithful performance of his duties.*

30

[logo]

And in faithful translation:

**Section 3. Powers and Duties.**

*The **officers**, agents, representatives and employees of the Corporation shall each have such powers and duties in the management of the property and affairs of the Corporation, **subject to the control of the Board of Directors** and approval of the Shareholders entitled to vote thereon, as generally pertain to their respective offices, as well as such powers and duties as from time to time may be prescribed by the Board of Directors and the Shareholders entitled to vote thereon. The Board of Directors may require any such officer, agent, representative or employee to give security for the faithful performance of his duties."*

**On 11/08/2024, by written letter from:**

a. Laskarina Karastamati, Chair and Board Member (and Designated Officer through the Declaration dated 09/26/2024)

b. Vasileios Kertsikoff, Vice President and Board Member (and Designated Officer through the Declaration dated 09/26/2024)

c. Eleni Karastamati, Board Member and

d. Panagiotis Konstantaras, Board Member,

**resigned** from the then eight-member ELETSON HOLDINGS' Board of Directors and the above capacities they held therein, while it was not possible to replace them, given that the Articles of Association of the Company did not provide for this and therefore no substitute members had been elected.

Following the above resignations, the **eight-member** Board of Directors of the Company has now been converted into a **four-member** Board, consisting of:

a) Vasileios Hatzieleftheriadis, Vice President, Treasurer and Board Member (and Designated Officer through the Declaration dated 09/26/2024)

b) Konstantinos Hatzieleftheriadis, Board Member,

c) Ioannis Zilakos, Board Member,

d) Emmanuel Androulakis, Secretary and Board member.

In addition to the total of three (3) designated employees/management officers of the Company, only one, Mr Vasileios Hatzieleftheriadis, remained.

[logo]

Given, however, as immediately mentioned above, that a quorum at the meetings of the Company's directors is required, in accordance with the statutory provision pursuant to article III, Section 5 – A quorum (Section 5. Quorum of the Bylaws) a **majority**, in combination with the fact **that** until recently the Company was governed by an **eight-member Board of Directors**, as shown by the resolution dated 12/11/2023 of the Joint Meeting of the Members of the Board of Directors and the Shareholders of ELETSON HOLDINGS, the latter, as of today, 11/08/2024, is deprived of management, unable to convene a General Assembly of Shareholders and to make decisions, and to represent and bind the Company.

In addition, due to the absence of the Board of Directors, no designated employees/management officers of the Company could be appointed, while the one who remained, Mr. Vasileios Hatzieleftheriadis, similarly cannot make decisions, represent and bind the Company, since there is no Board of Directors to review and approve his decisions, in accordance with Section 3, of article IV above. Power and Duties **(Section 3. Powers and Duties of the Bylaws).**

Therefore, **today, the Company lacks Management and legal representation.**

## C. THE RELATIONSHIP OF THE APPLICANT FOREIGN SHIPPING COMPANIES WITH "ELETSON HOLDINGS". – THE SHARE COMPOSITION OF THE COMPANY.

According to the Statement dated 09/26/2024 of the Directors, Designated Employees and Shareholders of the ELETSON HOLDINGS Company, the share capital of the company amounts to 10,000 class A nominal shares of no par value.

The applicants herein, **ELAFONISSOS SHIPPING CORPORATION and KEROS SHIPPING CORPORATION, are holders of 392 shares (shareholders) each**, representing **3.92% of the share capital** for each of them.

In addition to the above applicant companies, shareholders of the company since its inception are also the following foreign shipping companies, which belong to **three Greek families with the highest corporate percentage, namely:**

a.     The foreign shipping company **"LASSIA INVESTMENT COMPANY"** of the family of Laskarina Karastamati ("Karastamati"),

[logo]

**b.**   The foreign shipping company **"FAMILY UNITY TRUST COMPANY"** of the family of Vasilis Kertsikoff ("Kertsikoff"), and

**c.**   The foreign shipping company **"GLAFKOS TRUST COMPANY"** of the family of Vasilis Hatzieleftheriadis ("Hatzieleftheriadis"),

and which are holders of 3,072 shares each and each of them participates in the share capital of ELETSON HOLDINGS by **30.72%.**

**ELETSON HOLDINGS, therefore, belongs to foreign companies also belonging to Greek ultimate beneficiaries, is incorporated under the laws of Liberia and the base of its main interests is Piraeus, at 118 Kolokotroni Street.**

### D. EMERGENCY CASE – PERSISTENT RISK

*In this case*, due to the lack of management of the Company as detailed above **under B.** after the subsequent resignations of the four (4) members by then (8) eight-member Board of Directors of the Company, the remaining four members do not fill in the number of members required for the Board to be fully composed, there is an urgent case and an imminent risk that justifies the appointment of provisional management of the company during the injunctions proceedings to protect its rights.

In particular, there is an urgent case that your Court should regulate and appoint a temporary management of the Company in order to **manage** the Company and to **convene an extraordinary General Assembly for the election of a new Board of Directors:**

**(a)** To address current and urgent matters, such as acts for the management of the property of ELETSON HOLDINGS and any kind of transactions with financial institutions, charterers, suppliers, other trading partners and public bodies in Greece and abroad.

33

[logo]

**(b)** for the management of the four Special Maritime Enterprises controlled by the tankers MT Kastos, MT Kinaros, MT Kimolos and MT Fourni and the other subsidiaries of ELETSON HOLDINGS, which, due to their maritime nature, have lasting and urgent needs for making decisions and actions,

**(c)** for the representation of their maritime subsidiaries and maintaining smooth and continuous communication with the funding partners of the above ships, which are financed through sale and lease back agreements, and

**(d)** To make a decision to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies and aids provided by law (Greek or foreign) for the name and on behalf of the above company, **in order to safeguard its property and its interests**, and in particular for the Company:

- **To appear and be represented at the hearing (Status Conference) of <u>11/12/2024</u> before the U.S. District Court - Southern District of New York, consisting of Judge Lewis J. LIMAN, in order to oppose the objections, allegations and impediments brought by the Respondent Levona in the procedure to confirm the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting Judge-Arbitrator Ariel E. BELEN and hereinafter, to request the declaration of its enforceability in order to turn against Levona.**

- **To represent itself and its subsidiary, ELETSON CORPORATION, and to request the acknowledgment of the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN and the compliance of the respondent, "Levona", with all the provisions of its operative part, as well as the declaration of its enforceability under the provisions of the New York Convention, in the territory of another State than the one issued, inter alia, in Greece, where Levona holds property.**

- **Obtain judicial protection and be represented; so that, on the one hand, can support the appeal against the above Bankruptcy Decision, which is already issued, of the U.S. Bankruptcy Court - Southern District of New York comprising of Judge John P. MASTANDO which confirms the Voluntary Bankruptcy Decision dated 10/25/2024 (Chapter 11) of ELETSON HOLDINGS and its other companies of interest, as well as the amended plan for the reorganization of the Creditors <u>before the New York Bankruptcy Court</u>, as the relevant deadline for its exercise (of the appeal) would expire, as per the immediately above stated, on 11/08/2024, *on the other hand* to appeal, with the respective statutory legal remedies and means, <u>before the Greek Courts</u>, in order to challenge the Decision of Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) in which it was filed by the U.S. Bankruptcy Court for reasons**

34

[logo]

of lack of international jurisdiction of the latter in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council.

- In addition, in the event that the Creditors apply for the acknowledgment and execution of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter to appear and be represented before the competent Greek Courts in order to oppose, otherwise and as an impediment to the recognition of the above Bankruptcy Decision in Greece, due to the inadequacy of the issuing party's international jurisdiction in the Bankruptcy Decision, that is, the foreign Bankruptcy Court of the U.S., and for their other claims in their favor.

- To appoint proxy lawyers in Greece or abroad to be represented before domestic or foreign Courts, Arbitrators, Investigators and any other Authority required, in order to protect their interests, by filing legal remedies, using legal means, oppositions, etc.

## E. LEGAL SUBSUMPTION

According to the provision of article 69 of the Civil Code (which, according to its generality, applies to any kind of legal entity, therefore also to a Societe Anonyme - see ref. No. 619/1987 D 19, 283, Appeal 1750/1992, Arm MI.38), provisional management to a legal person may be appointed by the Court, upon request of anyone with a legitimate interest, only **if the persons required for the management are missing** or if their interests conflict with that of the legal person.

[logo]

By the provision of **article 69 of the Civil Code**, which is of an exceptional nature and is strictly limited by the constitutional principle of proportionality (article 25 par. 1 subpar. c of the Constitution) and the principles of temporality, economy and subsidiarity deriving from the latter (Supreme Court 1392/2014, Private Law Chronicles 2015/98, Thessaloniki Appellate Court 1106/2013, Commercial Law Review 2013/711), the protection of interests of the legal entity and third parties (partners, creditors) related thereto is sought, but also of the wider whole, in view of the importance of legal entities, and in particular commercial companies, as a means of conducting economic activity. The above lack of management, to allow the appointment of a temporary management, can be: **a)** fictitious, when, among other things, due to dystrophy, malpractice or disagreements of board members, their refusal or indifference to the exercise of the necessary management acts (Supreme Court 1392/2014; Private Law Chronicles 2015/98, Thessaloniki Appellate Court 1106/2013, Commercial Law Review 2013/711; Thessaloniki First Instance Court 6890/2016, Legal Databank NOMOS), **b)** actual, especially in cases of death, severe illness, long-term absence (Supreme Court 395/2002, Private Law Chronicles 2003/407, Thessaloniki Appellate Court 2326/2004, CJEU 2004/912, Thessaloniki First Instance Court 6890/2016, Legal Databank NOMOS), and c) legal, as it happens, among other things, in cases of resignation, even silent, of a member of the board of directors (Supreme Court Plenary 1601/2002, Private Law Chronicles 2003/118), annulment of a resolution of the general assembly (Supreme Court 1601/2002; Private Law Chronicles 2003/118), expiration of the board of directors' term (Supreme Court Plenary 5/2004, Private Law Chronicles 2004/553, Thessaloniki First Instance Court 6890/2016, Legal Databank NOMOS).

Lack of management of a Societe Anonyme exists in the case of inability to exercise the responsibilities of the board as a collective body and when only some of its members are missing and the remaining, together with the legally declared and existing deputies, do not complete the total number of members required by the articles of association. The possibility alone of the formation of a quorum by the non-resigned members does not cover the lack of management, if it is not otherwise specified in the articles of association, because this requires full assembly of the board, in order to have the full composition provided by the articles of association (Supreme Court 1392/2014 Private Law Chronicles 2015.98, Supreme Court 1408/2010, Private Law Chronicles 2011,528, Supreme Court 1430/1987, EEN 1988, 768), while, similarly, lack of management of the Societe Anonyme, justifying the appointment of a new [whole] board of directors, also exists in the event that certain board members refuse to carry out their duties or interfere with their work and the remaining members are not sufficient under the articles of association of the company for quorum formation (see Supreme Court 854/1998, Hellenic Justice 1999.79, 119, Nomiko

36

[logo]

Vima 2000.44, Athens Appellate Court 2424/1991, as above, Thessaloniki First Instance Court 1882/2011, Private Law Chronicles 2011.612). **It is therefore necessary and appropriate to appoint a temporary board of directors, fully formulated, that is, by a number of members equal to the one provided by the company's articles of association for ordinary management, and not only by what is required for the completion of the impeded ordinary management members, so there would be a "mixed" temporary management, that is, made up of both electives, as well as by appointed members (Supreme Court 1392/2014, Supreme Court 854/1998, Athens Appellate Court 4238/2010, Athens Appellate Court** 2326/2004, Single Member **Athens Appellate Court** 1829/2012, Legal Databank NOMOS**, also comprised of some of the ordinary members of management, deemed appropriate to fulfill the powers which are the subject of the temporary management, because in this case it is not a mixed temporary management, after these members have already permanently dismissed their status as an ordinary – elected member of management and are appointed because they were deemed suitable as members of the temporary management** (Single Member Athens Appellate Court 1829/2012, CJEU 2012.1157, Patras Appellate Court 455/1994, Commercial Law Review 1994.582, Athens Appellate Court. 2424/1991, Hellenic Justice 34,617, Beis, Civil Law - Voluntary Jurisdiction; article 786 p. 547-548 – opposing Supreme Court 1430/87, EED 46,865, Athens Appellate Court 4282/1998, Hellenic Justice 1999,421, Piraeus Appellate Court 285/1997, Hellenic Justice 1997.1664, Athens Appellate Court 9651/1992, Hellenic Justice 1995,211, Thessaloniki Appellate Court 3570/1990, Hellenic Justice 32,1310, Thessaloniki Appellate Court 855/2007, Private Law Chronicles 2008,159, Commercial Law Review 2007.871, Asprogerakas - Grivas, Lack of Legal Person Management, par. 20, A. Kritikos Law of Unions and Workers' Unions, 1982, p. 384 et seq, 390, 391, I. Karakatsanis, Interpretation of Civil Code, article 92 No. 33). This (management) will actively assume the corporate affairs of the company, which concern urgent corporate matters, such as the fulfillment of obligations and the collection of claims for the success of its statutory purposes, the exercise and support of legal aids and means, for the fulfillment of the aforementioned purposes, including the decision to exercise corporate action, pursuant to articles 102 et seq. of Law 4548/2018. The term of the provisional management must be set annually, for a period of time reasonable to avoid a disproportionate intervention in the constitutionally protected interest of the self-management of the legal person, since the management of all corporate affairs and in particular the management decisions of large financial and business interest cannot be made by a provisional management, which is deprived of the legalization of an elected management.

37

[logo]

The appointment of the provisional management is made in accordance with article 786 par. 1 of the Code of Civil Procedure, under the procedure of voluntary jurisdiction, by the Single-Member Court of First Instance of the region where the Societe Anonyme is headquartered.

**Furthermore, according to article 786 par. 1 of the Code of Civil Procedure, in conjunction with article 69 and 778 of the Civil Code, it is concluded that the appointment of a temporary management or liquidators of a legal person is mandated if there is a lack of management** of the legal person, which occurs in cases where there is a real or legal inability of the managers or liquidators to perform their duties. Instead, according to article 786 par. 3 of the Code of Civil Procedure, the Single-Member Court of First Instance of the region where the company is headquartered, replaces temporary management or temporary liquidators, **if a material reason exists.** The meaning of the provision of a "material reason" for the replacement of a liquidator is any event which makes it impossible or very difficult to carry out the purpose of the liquidation or from which it is concluded that retaining the liquidator or liquidators does not ensure the smooth and uninterrupted conduct of the liquidation and creates fears of serious damages to the interests of the company and the partners or from which it is concluded that the continuation of the administrative power of the liquidator is rendered intolerable, in good transactional faith and morality on behalf of the partners (Patras Single Member First Instance Court 428/2021).

According to the prevailing case law opinion, in the case of a suspected risk or an urgent case, it is possible to determine a temporary management of a legal person or to replace its members during the procedure of injunctive measures as well, under the assistance of the other conditions for obtaining them.

## F. THE REQUESTED JUDICIAL PROTECTION

**Whereas** the applicants, foreign shipping companies, **"ELAFONISSOS SHIPPING CORPORATION"** and **"KEROS SHIPPING CORPORATION",** we have a direct legitimate interest under the capacity of shareholder, of 3,9% of each of us from the total shares of the company **"ELETSON HOLDINGS INC."** to appoint a temporary Board of Directors to the shipping company **"ELETSON HOLDINGS INC.",** in order to **administer** the Company and to **convene an extraordinary General Assembly for the election of a new Board of Directors,** in order **(a)** to address current and urgent issues, such as transactions for the management of the property of ELETSON HOLDINGS and transactions of any nature with financial institutions, charterers, suppliers, other transactional and public bodies in Greece and abroad; and **(b)** to make a decision to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies and aids (Greek or foreign) in the name and on behalf of the aforementioned company in

38

[logo]

**order to safeguard its property and interests, on the one hand** from the Arbitration Decision issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN, on the other hand, to turn against the Voluntary Bankruptcy Decision of the Bankruptcy Court of the USA - South District of New York for ELETSON HOLDINGS (Chapter 11) which was issued in New York City on 10/25/2024 by this court which comprised of John P. MASTANDO, as well as the Order of the same U.S. Bankruptcy Court - Southern District of New York dated 11/04/2024, which court comprised of Judge John P. MASTANDO, which confirmed the Decision of Voluntary Bankruptcy (Chapter 11) of ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan dated 10/25/2024.

**Whereas the four (4) of the eight (8) members of the Board of Directors of the Company, namely** a) Laskarina Karastamati, b) Vasileios Kertsikoff, c) Eleni Karastamati, and d) Panagiotis Konstantaras pursuant to their written representations to the Company dated 11/08/2024, **expressly and in writing RESIGNED** from the Board of Directors of the foreign shipping company "**ELETSON HOLDINGS INC.**"

**Whereas a quorum at the meetings of the Board of Directors of the Company requires, according to the statutory provision of Section III above - (Section) 5 of the Bylaws of the 26th of June 2007), a simple majority, in combination, however, with the fact that** until recently the Company was governed by **an eight-member Board of Directors**, which was elected pursuant to the resolution dated 12/11/2023 of the Joint Meeting of the Members of the Board of Directors and of the Shareholders of ELETSON HOLDINGS, the last one as of today, 11/08/2024, lacks management, is not able to convene a general Assembly of Shareholders and make decisions and represent and bind the Company.

**Whereas** the foreign shipping company "**ELETSON HOLDINGS INC.**" lacks management and representation and has no protections against the voluntary bankruptcy proceedings initiated and redirected by its Creditors in New York against its property, it is certain that it will lose all of it and indeed permanently, if it does not oppose them in a timely manner.

**Whereas** following the aforementioned resignations, the company "**ELETSON HOLDINGS INC.**" does not have any body performing duties or management such as a director, manager, administrator or its representative, and thus is unable to exercise its legal rights and to address immediate and urgent current issues of its daily operation.

**Whereas** the applicants have a direct legitimate interest with the capacity of shareholders, 3.92% of each of us of the total shares of the company "**ELETSON HOLDINGS INC.**", to request the appointment of temporary management of the foreign shipping company "**ELETSON HOLDINGS INC.**"

39

[logo]

**Whereas** for all the above, a temporary management of eight-member composition of the foreign shipping company **"ELETSON HOLDINGS INC."** must be appointed with an annual term of office **consisting of the following members, namely:**

**The remaining directors of the Company:**

**1)**   Vasileios Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 8 Tinou Street, with Tax Registration Number 052767445

**2)**   Konstantinos Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 57, Plastira Street, with Tax Reg. No. 052767405

**3)**   Ioannis Zilakos, son of Nikolaos, resident of P. Psychiko of Attica, 13 Parnithos Street, with Tax Registration Number 065443172,

**4)**   Emmanuel Andreoulakis, son of Stylianos, resident of Piraeus, Attica, at 62 Iroon Polytechneiou, with Tax Registration Number 050222446,

**As well as the following persons as new BoD Members of the Company:**

**5)**   Adrianos Psomadakis - Karastamatis, son of Michael, resident of Piraeus, Attica, 98-100 Karpathou Street, with Tax Registration Number 164642953,

**6)**   Panos PAXINOS, son of Ioannis, resident of Chalandri of Attica, 58 Kefalinias Street, with Tax Reg. No. 030723274,

**7)**   Eleni Giannakopoulou, daughter of Konstantinos, resident of Ymittos, Attica, 43 M. Tsaliki Street, with Tax Reg. No. 052036400 and

**8)**   Niki, spouse of Nikolaos Zilakos, resident of Glyfada, Attica, 34 Tyrtaiou Street, with Tax Reg. No. 064165981

[logo]

to **administer** the Company: **(a)** to address current and urgent issues, such as transactions for the management of the property of ELETSON HOLDINGS and transactions of any nature with financial institutions, charterers, suppliers, other traders and public bodies in Greece and abroad, and **(b)** to manage the four Special Maritime Enterprises that control the tankers MT Kastos, MT Kinaros, MT Kimolos and MT Fourni, and its other subsidiaries; which, due to their maritime nature, have lasting and urgent needs for making decisions and proceeding to actions, **(c)** for the representation of their maritime subsidiaries and to maintain smooth and continuous communication with the sponsors of the above ships, funded through loan agreements with sale and lease back agreements, and **(d)** In order to make a decision to appoint attorneys and to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies (Greek or foreign) and aids in the name and on behalf of the aforementioned company, in **order to safeguard its property and interests, on the one hand** by the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal, consisting of Judge-Arbitrator Ariel E. BELEN, on the other hand, to turn against the Voluntary Bankruptcy Decision of ELETSON HOLDINGS (Chapter 11) issued on 10/25/2024 in New York by the U.S. Bankruptcy Court - Southern District of New York comprising of John P. MASTANDO, as well as the Order of the same U.S. Bankruptcy Court - Southern District of New York dated 11/04/2024, which court consisted of Judge John P. MASTANDO, confirming the Decision of Voluntary Bankruptcy (Chapter 11), dated 10/25/2024, of ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan **and to convene an extraordinary General Assembly for the election of a new Board of Directors**

**Whereas**, the above persons are the most suitable for the temporary management of the Company, as the first four of them are the remaining four (4) directors of the Company, after the resignation of the other four, as a result of the above, and for a number of years members of the Board of Directors, while the remaining four (new members) are also traders with their own companies, have a lot of experience in the corporate matters of shipping companies.

**Whereas** there is an immediate risk that the Company will **permanently** lose the management of its property, since, as mentioned above, voluntary bankruptcy proceedings have commenced against it by its Creditors in New York at the expense of its property, to which it has already opposed by filing the aforementioned appeal on 11/07/2024, as the relevant deadline expired on 11/08/2024, during the discussion of which it should appear and be represented to support what is involved, as well as it should be represented at the hearing (Status Conference) to be held on **11/12/2024** before the U.S. District Court - Southern District of New York comprising of Lewis J. LIMAN J. in order to counter objections, allegations

41

[logo]

and impediments brought by Respondent Levona in the confirmation procedure for the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal, consisting of Judge-Arbitrator Ariel E. BELEN and hereinafter, to request the declaration of its enforceability in order to turn against Levona.

**Whereas** there is an urgent case and an imminent risk that justifies the appointment of temporary management of the Company by proceeding to injunctive relief.

**Whereas** Your Court is competent and locally competent.

**Whereas** there is **an urgent need,** relating to the occurrence of immediate property damage to the Company and the final loss of such management as per the foregoing, which otherwise with certainty will occur, we request **an interim order** until the hearing of this application, on the condition that this will be discussed before your Court at the scheduled hearing on the scheduled trial date, by which the following are appointed as members of the temporary management of the foreign shipping company **"ELETSON HOLDINGS INC.":**

**1)** Vasileios Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 8 Tinou Street, with Tax Reg. No. 052767445

**2)** Konstantinos Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 57, Plastira Street, with Tax Reg. No. 052767405

**3)** Ioannis Zilakos, son of Nikolaos, resident of P. Psychiko of Attica, 13 Parnithos Street, with Tax Reg. No. 065443172,

**4)** Emmanuel Andreoulakis, son of Stylianos, resident of Piraeus, Attica, Iroon Polytechneiou No. 62, with Tax Reg. No. 050222446,

**5)** Adrianos Psomadakis – Karastamatis, son of Michael, resident of Piraeus, Attica, 98-100 Karpathou Street, with Tax Reg. No. 164642953,

**6)** Panos PAXINOS, son of Ioannis, resident of Chalandri, Attica, 58 Kefalinias Street, with Tax Reg. No. 030723274,

**7)** Eleni Giannakopoulou, daughter of Konstantinos, resident of Ymittos, Attica, 43 M. Tsaliki Street, with Tax Reg. No. 052036400 and

[logo]

**8)** Niki, spouse of Nikolaos Zilakos, resident of Glyfada, Attica, 34 Tyrtaiou Street, with Tax Reg. No. 064165981,

**with the power to administer the Company: (a) to address current and urgent issues, such as transactions for the management of the property of ELETSON HOLDINGS and transactions of any nature with financial institutions, charterers, suppliers, other traders and public bodies in Greece and abroad, and (b) to manage the four Special Maritime Enterprises that control the tankers MT Kastos, MT Kinaros, MT Kimolos and MT Fourni, and its other subsidiaries; which, due to their maritime nature, have lasting and urgent needs for making decisions and proceeding to actions, (c) for the representation of their maritime subsidiaries and to maintain smooth and continuous communication with the sponsors of the above ships, funded through loan agreements with sale and lease back agreements, and (d) In order to make a decision to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies (Greek or foreign) and aids provided by law (Greek or foreign) in the name and on behalf of the aforementioned company, in order to safeguard its property and interests, and in particular for the Company:**

- **To appear and be represented at the hearing (Status Conference) of <u>11/12/.2024</u> before the U.S. District Court - Southern District of New York, consisting of Judge Lewis J. LIMAN, in order to oppose the objections, allegations and impediments brought by the Respondent Levona in the procedure to confirm the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN and hereinafter, to request the declaration of its enforceability in order to turn against Levona.**

- **To represent itself and its subsidiary, ELETSON CORPORATION, and to request the acknowledgment of the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN and the compliance of the respondent, "Levona", with all the provisions of its operative part, as well as the declaration of its enforceability under the provisions of the New York Convention, in the territory of another State than the one issued, inter alia, in Greece, where Levona holds property.**

[logo]

- **Obtain judicial protection and on the one hand, to support the appeal against the above Bankruptcy Decision, which is already issued, of the U.S. Bankruptcy Court - Southern District of New York comprising of Judge John P. MASTANDO which confirms the Voluntary Bankruptcy Decision dated 10/25/2024 (Chapter 11) of ELETSON HOLDINGS and its other companies of interest, as well as the amended plan for the reorganization of the Creditors <u>before the New York Bankruptcy Court</u>, as the relevant deadline for its exercise (of the appeal) would expire, as per the immediately above stated, on 11/08/2024, on the other hand to appeal, with the respective statutory legal remedies and means, <u>before the Greek Courts</u>, in order to challenge the Decision of Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) in which it was filed by the U.S. Bankruptcy Court for reasons of lack of international jurisdiction of the latter in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council.**

- **In addition, in the event that the Creditors apply for the acknowledgment and execution of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter to appear and be represented before the competent Greek Courts in order to oppose, otherwise and as an impediment to the recognition of the above Bankruptcy Decision in Greece, due to the inadequacy of the issuing party's international jurisdiction in the Bankruptcy Decision, that is, the foreign Bankruptcy Court of the U.S., and for their other claims in their favor.**

- **To appoint proxy lawyers in Greece or abroad to be represented before domestic or foreign Courts, Arbitrators, Investigators and any other Authority required, in order to protect their interests, by filing legal remedies, using legal means, oppositions, etc.**

- **To convene an extraordinary General Assembly for the election of a new Board of Directors.**

**Whereas** this application is legal, valid and true, it must be accepted by Your Court.

[logo]

**Whereas** the legal fee of my proxy attorneys for the filing of this document has been paid, as shown in the advance payment receipts of the Athens Bar Association Nos…
...........................................................................

### FOR THESE REASONS

All with our legal rights reserved

### WE HEREBY REQUEST

- That this application be accepted.

- To **temporarily adjust the status**, in particular:

- A **temporary Board of Directors of eight-member composition must be appointed with an annual term in order to manage the** foreign shipping company **"ELETSON HOLDINGS INC."**, which is based at its registered office in Liberia, in fact in Greece, at 118 Kolokotroni Street in Piraeus, where it maintains a legally established office in accordance with the provisions of article 25 of Law 27/1975, and the following members must be appointed as members of the aforementioned temporary management:

**The remaining BoD Members of the Company:**

**1)** Vasileios Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 8 Tinou Street, with Tax Reg. No. 052767445

**2)** Konstantinos Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 57, Plastira Street, with Tax Reg. No. 052767405

**3)** Ioannis Zilakos, son of Nikolaos, resident of P. Psychiko of Attica, 13 Parnithos Street, with Tax Reg. No. 065443172,

**4)** Emmanuel Andreoulakis, son of Stylianos, resident of Piraeus, Attica, at 62 Iroon Polytechneiou, with Tax Reg. No. 050222446,

**As well as the following persons as new BoD Members of the Company:**

**5)** Adrianos Psomadakis – Karastamatis, son of Michael, resident of Piraeus, Attica, 98-100 Karpathou Street, with Tax Reg. No. 164642953,

**6)** Panos PAXINOS, son of Ioannis, resident of Chalandri, Attica, 58 Kefalinias Street, with Tax Reg. No. 030723274,

45

[logo]

**7)**     Eleni Giannakopoulou, daughter of Konstantinos, resident of Ymittos, Attica, 43 M. Tsaliki Street, with Tax Reg. No. 052036400 and

**8)**     Niki, spouse of Nikolaos Zilakos, resident of Glyfada, Attica, 34 Tyrtaiou Street, with Tax Reg. No. 064165981,

who will have the power and authority to: (**a**) **manage** the Company to address current and urgent matters, such as transactions for the management of the property of ELETSON HOLDINGS and transactions of any nature with financial institutions, charterers, suppliers, other traders and public bodies in Greece and abroad, **(b)** for the management of the four Special Maritime Enterprises that control the tankers MT Kastos, MT Kinaros, MT Kimolos and MT Fourni and its other subsidiaries, which, due to their maritime nature, have lasting and urgent needs for making decisions and taking actions, (c) for the representation of their maritime subsidiaries and to maintain smooth and continuous communication with the funders of the above ships, funded through loan agreements with sale and lease back agreements, and (d) to render a decision to exercise, on behalf of the Company "ELETSON HOLDINGS INC.", all legal remedies and aids provided by law (Greek or foreign) in the name and on behalf of the above company in **order to safeguard its property and its interests**, on *the one hand* by the Arbitration Award of the Arbitral Tribunal issued in New York on 09/29/2023, which tribunal consisted of Judge-Arbitrator Ariel E. BELEN, ***on the other hand***, to turn against the Voluntary Bankruptcy Decision of ELETSON HOLDINGS (Chapter 11) issued on 10/25/2024 in New York by the U.S. Bankruptcy Court - Southern District of New York comprising of John P. MASTANDO, as well as the Order of the same U.S. Bankruptcy Court - Southern District of New York dated 11/04/2024, which court consisted of Judge John P. MASTANDO, confirming the Decision of Voluntary Bankruptcy (Chapter 11), dated 10/25/2024, of ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan and (c) **to convene an extraordinary General Assembly for the election of a new Board of Directors.**

To issue an **interim order**, **appointing them temporarily** until the discussion of this application, and subject to the discussion hereof before Your Court at the appointed hearing, as members of the temporary management of the foreign shipping company **"ELETSON HOLDINGS INC.",** the following:

[logo]

**1)** Vasileios Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 8 Tinou Street, with Tax Reg. No. 052767445

**2)** Konstantinos Hatzieleftheriadis, son of Apostolos, resident of Voula, Attica, 57, Plastira Street, with Tax Reg. No. 052767405

**3)** Ioannis Zilakos, son of Nikolaos, resident of P. Psychiko of Attica, 13 Parnithos Street, with Tax Reg. No. 065443172,

**4)** Emmanuel Andreoulakis, son of Stylianos, resident of Piraeus, Attica, Iroon Polytechneiou No. 62, with Tax Reg. No. 050222446,

**5)** Adrianos Psomadakis – Karastamatis, son of Michael, resident of Piraeus, Attica, 98-100 Karpathou Street, with Tax Reg. No. 164642953,

**6)** Panos PAXINOS, son of Ioannis, resident of Chalandri, Attica, 58 Kefalinias Street, with Tax Reg. No. 030723274,

**7)** Eleni Giannakopoulou, daughter of Konstantinos, resident of Ymittos, Attica, 43 M. Tsaliki Street, with Tax Reg. No. 052036400 and

**8)** Niki, spouse of Nikolaos Zilakos, resident of Glyfada, Attica, 34 Tyrtaiou Street, with Tax Reg. No. 064165981,

**with the power to call for an extraordinary General Assembly for the election of a new Board of Directions, so that they administer the Company until then, in order to: (a) address current and urgent issues, such as transactions for the management of the property of ELETSON HOLDINGS and transactions of any nature with financial institutions, charterers, suppliers, other traders and public bodies in Greece and abroad, and (b) to manage the four Special Maritime Enterprises that control the tankers MT Kastos, MT Kinaros, MT Kimolos and MT Fourni, and its other subsidiaries; which, due to their maritime nature, have lasting and urgent needs for making decisions and proceeding to actions, (c) for the representation of their maritime subsidiaries and to maintain smooth and continuous communication with the sponsors of the above ships, funded through loan agreements with sale and lease back agreements, and (d) In order to make a decision to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies (Greek or foreign) and aids provided by law (Greek or foreign) in the name and on behalf of the aforementioned company, in order to safeguard its property and interests, and in particular for the Company:**

47

[logo]

- **To appear and be represented at the hearing (Status Conference) of <u>11/12/.2024</u> before the U.S. District Court - Southern District of New York, consisting of Judge Lewis J. LIMAN, in order to oppose the objections, allegations and impediments brought by the Respondent Levona in the procedure to confirm the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN and hereinafter, to request the declaration of its enforceability in order to turn against Levona.**

- **To represent itself and its subsidiary, ELETSON CORPORATION, and to request the acknowledgment of the Arbitration Award issued in New York on 09/29/2023 by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. BELEN and the compliance of the respondent, "Levona", with all the provisions of its operative part, as well as the declaration of its enforceability under the provisions of the New York Convention, in the territory of another State than the one issued, inter alia, in Greece, where Levona holds property.**

- **Obtain judicial protection and on the one hand, to support the appeal against the above Bankruptcy Decision, which is already issued, of the U.S. Bankruptcy Court - Southern District of New York comprising of Judge John P. MASTANDO which confirms the Voluntary Bankruptcy Decision dated 10/25/2024 (Chapter 11) of ELETSON HOLDINGS and its other companies of interest, as well as the amended plan for the reorganization of the Creditors before the <u>New York Bankruptcy Court</u>, as the relevant deadline for its exercise (of the appeal) would expire, as per the immediately above stated, on 11/08/2024, on the other hand to appeal, with the respective statutory legal remedies and means, before the <u>Greek Courts</u>, in order to challenge the Decision of Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) in which it was filed by the U.S. Bankruptcy Court for reasons of lack of international jurisdiction of the latter in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council.**

48

[logo]

- **In addition, in the event that the Creditors apply for the acknowledgment and execution of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter to appear and be represented before the competent Greek Courts in order to oppose, otherwise and as an impediment to the recognition of the above Bankruptcy Decision in Greece, due to the inadequacy of the issuing party's international jurisdiction in the Bankruptcy Decision, that is, the foreign Bankruptcy Court of the U.S., and for their other claims in their favor.**

- **To appoint proxy lawyers in Greece or abroad to be represented before domestic or foreign Courts, Arbitrators, Investigators and any other Authority required, in order to protect their interests, by filing legal remedies, using legal means, oppositions, etc.**

For your Court to issue a note, with similar content as above, until the day of the hearing of the temporary order.

To **impose** the court costs against the corporate property.

Athens, November 11, 2024

The Proxy Attorneys

| [signature] | [signature] |
|---|---|
| [stamp:] Mr. F. KALAVROS LAW COMPANY | [stamp:] Mr. F. KALAVROS LAW COMPANY |
| Ch. P. FILIOS • Th. Th. KLOUKINAS | Ch. P. FILIOS • Th. Th. KLOUKINAS |
| 19 VRANA - ATHENS 115 25 | 19 VRANA - ATHENS 115 25 |
| T. 2103698700 F. 2103698750 | T. 2103698700 F. 2103698750 |
| THEMOSTOKLIS TH. KLOUKINAS, ATTORNEY AT LAW | MARIA P. HAHAMI, ATTORNEY AT LAW |
| E: kloukinas@calavros.gr | E: chachami@calav.os.gr |

[stamp:] LEGAL DOCUMENT FILING REPORT
This legal document was filed
by the undersigned attorney at law.
Piraeus [hw:] *11/11/2024*
Filed by   The Secretary
[signature]

[hw:] *1) THEMISTOKLIS KLOUKINAS*

*Athens Bar Association #12348* [signature]

*2) MARIA HACHANI (Athens Bar Assoc. 30482)* [signature]

49

[logo]

No: P5371062
Date: 11//08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 53.20 EURO
Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS - Ch. P. FILIOS - Th.** KLOUKINAS, with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FIFTY-THREE EUROS AND TWENTY CENTS** for the lawyer **MARIA HAHAMI, daughter of PANAGIOTIS** with Reg. No. **030482** and Tax Reg. No. **131220580** concerning an APPLICATION, APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT – VOLUNTARY JURISDICTION in the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €204.00

| | | | |
|---|---|---|---|
| Athens Bar Association | €8.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €40.80 | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €30.60 | | |
| **TOTAL WITHHOLDINGS** | €49.20 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €83.80 | | |

*VAT 24% = €48.96 is calculated on the amount of €204.00. (Total amount of [illegible] and VAT: €252.96)

[QR code]

By order of   Athens Bar Association

[logo]

No: P5371031
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 53.20 EURO
Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS - Ch. P. FILIOS - Th.** KLOUKINAS with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FIFTY-THREE EUROS AND TWENTY CENTS** for the attorney at law **KLOUKINAS THEMOSTOKLIS, son of THEODOROS** with Reg. No. **012348** and Tax Reg. No. **040315330** concerning an APPLICATION, APPEARANCE BEFORE THE PIRAUS SINGLE MEMBERS FIRST INSTANCE COURT for the case of her principal **ELAFONISSOS SHIPPING CORPORATION, etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €204.00

| | | | |
|---|---|---|---|
| Athens Bar Association | €8.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €40.80 | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €30.60 | | |
| **TOTAL WITHHOLDINGS** | €49.20 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €83.80 | | |

*VAT 24% = €48.96 is calculated on the amount of €204.00. (Total amount of reference and VAT:€252.96)

[qr code]

By order of   Athens Bar Association

[logo]

No: P5371062
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 53.20 EURO
#### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS - Ch. P. FILIOS - Th.** KLOUKINAS, with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FIFTY-THREE EUROS AND TWENTY CENTS** for the lawyer **MARIA HAHAMI, daughter of PANAGIOTIS** with Reg. No. **030482** and Tax Reg. No. **131220580** concerning an APPLICATION, APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT – VOLUNTARY JURISDICTION in the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €204.00

| | | | |
|---|---|---|---|
| Athens Bar Association | €8.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €40.80 | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €30.60 | | |
| **TOTAL WITHHOLDINGS** | €49.20 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €83.80 | | |

*VAT 24% = €48.96 is calculated on the amount of €204.00. (Total amount of reference and VAT:€252.96)

[QR code]

By order of Athens Bar Association

---

[logo]

No: P5371031
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 53.20 EURO
#### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS - Ch. P. FILIOS - Th.** KLOUKINAS with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FIFTY-THREE EUROS AND TWENTY CENTS** for the attorney at law **KLOUKINAS THEMOSTOKLIS, son of THEODOROS** with Reg. No. **012348** and Tax Reg. No. **040315330** concerning an APPLICATION, APPEARANCE BEFORE THE PIRAUS SINGLE MEMBERS FIRST INSTANCE COURT for the case of her principal **ELAFONISSOS SHIPPING CORPORATION, etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €204.00

| | | | |
|---|---|---|---|
| Athens Bar Association | €8.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €40.80 | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €30.60 | | |
| **TOTAL WITHHOLDINGS** | €49.20 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €83.80 | | |

*VAT 24% = €48.96 is calculated on the amount of €204.00. (Total amount of reference and VAT:€252.96)

[qr code]

By order of Athens Bar Association

[logo]

No: P5371076
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

## FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 48.60 EURO
### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27–2013)

LAW FIRM **K. F. KALAVROS - Ch. P. FILIOS - Th. KLOUKINAS** with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FORTY-EIGHT EUROS AND SIXTY-CENTS** for the attorney at law **THEMOSTOKLIS KLOUKINAS, son of THEODOROS** with Reg. No. **012348** and Tax Reg. No. **040315330**, which concerns the APPLICATION TEMPORARY ORDER - APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT - INJUNCTION MEASURES (of ANY TYPE) for the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

### ITEMIZED (*)
### REFERENCE [illegible] (Par. I of Law 4194/2013) €186.00

| | | | |
|---|---|---|---|
| Athens Bar Association | 7,00 € | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | 37,20 € | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | 27,90 € | | |
| **TOTAL WITHHOLDINGS** | 44,60 € | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €76.50 | | |

*VAT 24% = €44.64 is calculated on the amount of €186.00. (Total amount of reference and VAT:€230.64)

[QR code]

By order of Athens Bar Association

[logo]

No: P5371065
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

## FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 48.60 EURO
### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

LAW FIRM **K. F. KALAPROS - Ch. P. FILIOS - TH. KLOUKINAS** with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FORTY-EIGHT EUROS AND SIXTY CENTS** for the attorney at law **MARIA HAHAMI, daughter of PANAGIOTIS** with Reg. No. **030482** and Tax Reg. No. **131220580**, which concerns the APPLICATION TEMPORARY ORDER - APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT for INJUNCTION MEASURES (of ANY TYPE) for the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

### ITEMIZED (*)
### REFERENCE [illegible] (Par. I of Law 4194/2013) €186.00

| | | | |
|---|---|---|---|
| Athens Bar Association | 7,00 € | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | 37,20 € | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | 27,90 € | | |
| **TOTAL WITHHOLDINGS** | 44,60 € | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €76.50 | | |

*VAT 24% = €44.64 is calculated on the amount of €186.00. (Total amount of reference and VAT:€230.64)

[qr code]

By order of Athens Bar Association

[logo]

No: P5371076
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 53.20 EURO
#### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

LAW FIRM **K. F. KALAVROS - Ch. P. FILIOS - Th. KLOUKINAS** with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FORTY-EIGHT EUROS AND SIXTY-CENTS** for the attorney at law **THEMOSTOKLIS KLOUKINAS, son of THEODOROS** with Reg. No. **012348** and Tax Reg. No. **040315330**, which concerns the APPLICATION TEMPORARY ORDER - APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT - INJUNCTION MEASURES (of ANY TYPE) for the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €186.00

| | | | |
|---|---|---|---|
| Athens Bar Association | 7,00 € | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | 37,20 € | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | 27,90 € | | |
| **TOTAL WITHHOLDINGS** | 44,60 € | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €76.50 | | |

*VAT 24% = €44.64 is calculated on the amount of €186.00. (Total amount of reference and VAT:€230.64)

[qr code]

By order of  Athens Bar Association

---

[logo]

No: P5371065
Date: 11/08/2024

## ATHENS BAR ASSOCIATION

### FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 48.60 EURO
#### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K. F. KALAPROS - Ch. P. FILIOS - TH. KLOUKINAS** with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **FORTY-EIGHT EUROS AND SIXTY CENTS** for the attorney at law **MARIA HAHAMI, daughter of PANAGIOTIS** with Reg. No. **030482** and Tax Reg. No. **131220580**, which concerns the APPLICATION, TEMPORARY ORDER - APPEARANCE before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT for INJUNCTION MEASURES (of ANY TYPE) for the case of her principal **ELAFONISSOS SHIPPING CORPORATION etc.**

#### ITEMIZED (*)
#### REFERENCE [illegible] (Par. I of Law 4194/2013) €186.00

| | | | |
|---|---|---|---|
| Athens Bar Association | 7,00 € | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | 37,20 € | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | 27,90 € | | |
| **TOTAL WITHHOLDINGS** | 44,60 € | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €76.50 | | |

*VAT 24% = €44.64 is calculated on the amount of €186.00. (Total amount of reference and VAT:€230.64)

[QR code]

By order of  Athens Bar Association

# e-FeeReceipt

[logo] **HELLENIC REPUBLIC** Ministry of Digital Governance

[qr code] [barcode]

## For use by the Public Service

| Fee Receipt Code | 734608631955 0512 0016 | | |
|---|---|---|---|
| Service | Justice | | |
| Fee Receipt Category | TA.X.DI.K. Stamp Duty ("Megarosimo") | | |
| Place of Fee | [ 2389 ] TA.X.DI.K. Stamp Duty ("Megarosimo") 6 euros | | |
| Amount (€) | EUR 6.00 | | |
| T.R.N. | 131220580 | Mother's last name | |
| Last name/Company name | HAHAMI | Date of Birth | |
| Name/Address | MARIA | Additional details | CERTIFICATION OF COPIES |
| Father's Name | PANAGIOTIS | | |
| | | email | |

## For Official Use

| Administrative Fee Code | 734608631955 0512 0016 | | |
|---|---|---|---|
| Public Authority | Justice | | |
| Administrative Fee Category | Ta.X.DI.K. Stamp Duty ("Megarosimo") | | |
| Administrative Fee Type | [ 2389 ] TA.X.DI.K. Stamp Duty ("Megarosimo") 6 euros | | |
| Amount (€) | Euro 6.00 | | |
| Tax Reg. Number | 131220580 | Mother's Name | |
| Last Name/Company | HAHAMI | Date of Birth | |
| First Name/Address | MARIA | Additional Info | CERTIFICATION OF COPIES |
| Father's Name | PANAGIOTIS | | |
| | | email | |

| [logo] | **General Secretariat for Information Systems & Digital Governance** | **e-FeeReceipt** | [logo] | **HELLENIC REPUBLIC** Ministry of Digital Governance |

## For use by the Citizen

| | |
|---|---|
| **Fee Receipt Code** | 734608631955 0512 0016 |
| **Service** | Justice |
| **Fee Receipt Category** | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| **Place of Fee** | [ 2389 ] TA.X.DI.K. Stamp Duty ("Megarosimo") 6 euros |

| | | | |
|---|---|---|---|
| **Amount (€)** | EUR 6.00 | | |
| **T.R.N.** | 131220580 | **Mother's last name** | |
| **Last name/Company name** | HAHAMI | **Date of Birth** | |
| **Name/Address** | MARIA | **Additional details** | CERTIFICATION OF COPIES |
| **Father's Name** | PANAGIOTIS | | |
| **Bank** | | email | |
| **IBAN account** *(In case of refund)* | | | |

## For Citizens Use

| | |
|---|---|
| **Administrative Fee Code** | 734608631955 0512 0016 |
| **Public Authority** | Justice |
| **Administrative Fee Category** | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| **Administrative Fee Type** | [ 2389 ] TA.X.DI.K. Stamp Duty ("Megarosimo") 6 euros |

| | | | |
|---|---|---|---|
| **Amount (€)** | Euro 6.00 | | |
| **Tax Reg. Number** | 131220580 | **Mother's Name** | |
| **Last Name/Company** | HAHAMI | **Date of Birth** | |
| **First Name/Address** | MARIA | **Additional Info** | CERTIFICATION OF COPIES |
| **Father's Name** | PANAGIOTIS | | |
| **Bank Name** | | email | |
| **Bank Account - IBAN** *(In case of refund)* | | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| **e-FeeReceipt** | | *copy for the Bank* |
|---|---|---|
| **Payment Code** | RF34 9051 0200 9500 7346 0863 1 | **Amount** | €6.00 |
| **Service** | Justice | | |
| **Fee Receipt Category** | TA.X.DI.K. Stamp Duty ("Megarosimo") | | |
| **Fee Receipt Type** | [ 2389 ] TA.X.DI.K. Stamp Duty ("Megarosimo") 6 euros | | |

[qr code]          [barcode]

# [logo:] Piraeus

[logo:] fee

Payment of e-Receipt

---

✓ **Your transaction has been successfully executed with the following details:**

---

| | |
|---|---|
| Transaction Code | **PX243164438553** |
| Bank Account: | GR83 0172 1040 0051 0408 4899 966 |
| Name - Company Name: | MARIA HAHAMI |
| Payment Code: | RF34905102009500734608631 |
| Amount: | EUR 6.00 |

**Execution details**

Execution  On 11/11/2024

Date of Update: **11/11/2024 12:17:32**

Should you wish to contact us, please call us on +30 210 3288000.

[logo]

**HELLENIC REPUBLIC**

PIRAEUS FIRST INSTANCE COURT

## LEGAL DOCUMENT FILING REPORT

Type of Legal Document: APPLICATION WITH TEMPORARY ORDER

General Filing Number: 16655/2024

Special Filing Number: 7823/2024

Exception Request Number: 0

Before the PIRAEUS FIRST INSTANCE COURT today, 11-11-2024 Monday at 13:20 a.m., the attorney at law KLOUKINAS THEMOSTOKLIS with Reg. No.: 012348 of the Bar Association of ATHENS with Tax Reg. No. 040315330, MARIA HAHAMI with Reg. No.: 030482 of the Bar Association of ATHENS with Tax Reg.. No. 131220580, and filed the above legal document.

For this act, this report was drafted and lawfully signed.       L

| Filed by | The Secretary |
|---|---|
| | [signature] |
| KLOUKINAS THEMISTOKLIS | GIZA OURANIA |

## HEARING SCHEDULING ACT

Proceedings: VOLUNTARY, of the SINGLE MEMBER COURT

Docket: VOLUNTARY, SINGLE-MEMBER ADMIRALTY COURT

with Docket Number: 1

We hereby schedule the discussion on 02/04/2025, Tuesday at 09:00 at the COURT OF FIRST INSTANCE of PIRAEUS at 3-5 Skouze, Second Floor, Room 218

with the condition that this legal document will be notified FIFTEEN (15) days before the hearing to the MEMBERS OF THE LAST LEGALLY PUBLISHED BoD OF ELETSON HOLDINGS INC.

Service will be performed at the responsibility of the applicant.

PIRAEUS, 11/11/2024

The Judge

[signature]

KOFINA EFTHYMIA

**TRUE COPY**

PIRAEUS, 11/11/2024

The Secretary

[signature]

GIZA OURANIA

**TEMPORARY ORDER**

The Judge of this court DELAZANOS ELIAS, appointed by the Presiding Judge of the Three-Member Council.

**SCHEDULES**

A date for the hearing of the application for the provision of a Temporary Order on 11/12/2024, Tuesday at 11.15, at the office of the President of the Service (5th floor, office 515).

Notification UNTIL 11/12/2024 AT TIME 10.00 AM

PIRAEUS, 11/11/2024

The Judge

[signature]

DELAZANOS ELIAS

**TRUE COPY**

PIRAEUS, 11/11/2024

The Secretary

[signature]

GIZA OURANIA

[hw:] [illegible]

*11/12/2024*

[stamp:] [illegible]

Presiding Judge of First Instance

[signature]

[hw:] *- Accepts application to grant a temporary order*

*Appoints temporary management of a shipping company*

*KELETSON HOLDINGS INC, consisting of the following persons*

*Vasileios Hatzieleftheriadis son of Apostolos, 2) Konstantinos Hatzieleftheriadis, son of Apostolos, 3) Ioannis Zilakos, son of Nikolaos, 4) Emmanuel Androulakis, son of Stylianos, 5) Andrianos Psomadakis-Karastamatis, son of Michael, 6) [illegible] son of Ioannis, 7) Eleni Giannopoulou [illegible], and 8) Niki, spouse of Nikolaos Zilakos, for their appearance and legal representation (appointment of attorney) before the US Courts of New York for its corporate affairs, temporarily until the discussion of the case on the scheduled hearing date and the time of discussion [illegible] on said hearing date.*

[hw:] *Piraeus, 11/12/2024*

*The President of the Service*

[stamp:] Antonia Megouli

Presiding Judge of First

Instance

[signature]

because of the circumstances at the time, to stipulate with the Petitioner to convert the the Chapre 7 to a Chapter 11 proceedings.

3.20    That as to count five (5)  and six(6) of the Petition, Respondent says that  although the court did review the plans of the parties, the court did not consider whether (or to what extent) the overall bad faith conduct of Murchison/ Pach Shemen in planning and carrying out the scheme to seize control of the Respondent (and through it, Eletson Gas) by means of a multi-year conspiracy was egregious enough to warrant rejecting the entire campaign and denying Pach Shemen standing and the Plan submitted by it. On October 25, 2025, the court approved the Petitioner's plan submitted on September 19, 2024, which provided that certain corporate procedures would take place pursuant to applicable Liberian law as part of the plan becoming effective-i.e.-amendment of its Articles of Incorporation, etc. The court did not approve any supplemental plan thereafter.

3.21    That as to count seven (7) of the petition, Respondent says that it is a non-resident Liberian domestic corporation. However, it refutes that amendments to the Respondent's Articles of Incorporation must be filed and registered with the Liberian International Ship & Corporate Registry (LISCR).  LISCR is the statutory registered agent for Liberian non-resident domestic corporations and Foreign Maritime Entities only. LISCR is responsible for receipt and service of process, and to ensure the keeping of the required information of directors, management, and ownership to enable accessibility and availability of that information to the relevant competent authorities. The Registrar - the Minister of Foreign Affairs-the US equivalent of Secretary of State or the Deputy Registrar, or an official of the Liberian Government designated by the Registrar are authorized under the Business Corporation Act to file and effect amendments to the Articles of Incorporation of Liberian corporations.

3.22    That as to count eight (8) of the petition, Respondent confirms and affirms count 3.21 above and says further that LISCR as the statutory registered agent of non-resident domestic corporation, it is authorized to adopt procedures and other mechanisms for the smooth operation of the Registry. Filings and submission of information relating to directors, management, and ownership of non-resident corporations (incumbency) can be made and accepted only from a pre-designated authorized representative of the non-resident domestic corporation and Foreign Maritime Entities known and referred to as the Address of Record ("AOR") as per the procedure established by LISCR, unless otherwise instructed by a competent Liberian court.

3.23    That as to count nine (9) of the petition, Respondent confirms that LISCR does not file Articles of Incorporation or Amendments to Articles of Incorporation of Liberian corporations. The Registrar or Deputy Registrar will not file or amend a Liberian corporation's Articles of Incorporation unless it is done upon the decision made by the corporation and not pursuant to the order of a foreign court that has not been recognized by the courts of Liberia by way of petition for the enforcement of judgment.

3.24    That as to count ten (10) and eleven (11)  of the petition, Respondent says that a foreign judgment i.e. a confirmation order confirming a Chapter 11 plan confirmation judgment of the Southern District of New York Bankruptcy Court which purports to cancel and extinguish the common shares of a non-resident Liberian corporation and purports to issue new shares ("Reorganized Equity") is not considered conclusive as to any act(s) enumerated therein, and cannot be given automatic effect under Liberian law, but may be admitted as evidence  and enforced by a Liberian court based on comity. The Liberian Constitution has no such provision, and there is no statute or treaty with respect to the effect to be given a foreign judgment. In the absence of a special compact, no sovereign state is bound to give effect within its territory to a judgment rendered by the tribunals of another country; and it is at liberty to give or refuse effect to it as may be found just and equitable" [Emphasis supplied]. In the instant case, Respondent says that it would be unjust and inequitable to give effect to the foreign judgment sought to be enforced by the Petitioner for all of the reasons stated above. Even if the Respondent appeared in the foreign court, neither the Constitution of Liberia (1986), the statute or any case law has established that a foreign judgment is conclusive  against a party, if the party appeared and the foreign court purportedly or actually had jurisdiction. The subject of foreign judgment is captured under **Chapter 25.12 of the Civil Procedure Law**, which deals with evidence. The foreign judgment is taken as evidence, but it is not considered conclusive and enforceable. The decision of what effect if any is to be given to the judgment as a piece of evidence, lies within the sound discretion of the court considering comity between and amongst states, and other factors such as justice and equity.

3.25    That as to count twelve (12) of the petition, Respondent says that it is without sufficient information to confirm or deny the averment.

3.26.    That as to count thirteen (13) of the Petition, a fundamental requirement for the enforcement of a foreign judgment in Liberia is that the judgment sought to be enforced must in the discretion of the court be considered just and equitable. The Petitioners have failed to show that the judgment sought to be enforced is just and equitable. The Petitioners have instead sought to only establish that the US court which rendered the judgment had jurisdiction to do so, and that the Respondent appeared in the proceedings. The Petitioners have also failed to show that this court (the sixth judicial circuit) has jurisdiction to hear the enforcement of judgment from a Bankruptcy Court of a foreign state/jurisdiction.

3.27    That as to the prayer of the Petitioner, Respondent says that judgment concludes against only persons that are parties to the case out of which the judgment grows. In the instant case, the Petitioner has failed to name and designate LISCR as a party to the suit even if they are considered nominal. Notwithstanding, Petitioner requests court to take actions against LISCR which impacts the rights of the Respondent, without designating LISCR as a Party. Respondent therefore request that the Petitioner's request for this court's order directed at LISCR should be disregarded.

3.28    Respondent denies all and singular the allegations of laws facts that were specifically traversed and reserves the right to interpose appropriate objections and defenses including objection to jurisdiction during the hearing or in any subsequent proceedings.


WHEREFORE, and in view of the foregoing, Respondent prays Your Honour to:

(i)    Issue an Interim Order prohibiting the Petitioner from continuing to hold itself as shareholders, director, and attempting to control the Respondent and its affiliates pending the conclusion of these proceedings.

(ii)    Deny and dismiss the petition

(iii)    Grant unto Respondent any and all such further relief deemed by Your Honour to be just, legal, and equitable as in keeping with law.

Respectfully Submitted,
The above-named Respondent,
Eletson Holdings Inc.
By and thru their Legal Counsels
Lex Group Liberia
Opposite Dominion Christian Fellowship Church
Congo Town, Monrovia, Liberia

_____
J. Daku Mulbah
Counsellor-At-Law

_____
Elizabeth Horace-Kwemi
Counsellor-At-Law


Dated this __16__ day December A. D., 2024